RECEIVED

DEC 0 7 2016 SW

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

_THOMAS BRitton_

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

1:16-cv-11180
Judge Jorge L. Alonso
Magistrate Judge Michael T. Mason
PC4

vs.

_Tarry Williams, Sarah Johnson,_
_c/o Baker, c/o De-Young, c/o Taylor_
_c/o Montoya, c/o Williams, Sgt. Wheeler,_
_Sgt. Durrett, Lt. Brown, c/o West,_
_c/o John Doe, John Baldwin, Warden Pfister._

_____ defendants

(Enter above the full name of ALL
defendants in this action.  Do not
use "et al.")

Case No:_____
(To be supplied by the Clerk of this Court)

**CHECK ONE ONLY:**

✔ **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code** (state, county, or municipal defendants)

_____ **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code** (federal defendants)

_____ **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING."  FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I. **Plaintiff(s):**

A. Name: _THOMAS BRITTON_

B. List all aliases: _N/A_

C. Prisoner identification number: _B-62376_

D. Place of present confinement: _PONTIAC C. CENTER_

E. Address: _PONTIAC IL 61764 PO BOX 99_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A. Defendant: _TARRY WILLIAMS_

Title: _WARDEN_

Place of Employment: _STATEVILLE C. CENTER_

B. Defendant: _PFISTER_

Title: _WARDEN_

Place of Employment: _STATEVILLE C. CENTER_

C. Defendant: _JOHN BALDWIN_

Title: _Acting DIRECTOR Illinois Department of CORR._

Place of Employment: _Illinois Department of Corrections_

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

Defendants

3) D. SARAH JOHNSON

Administrative Review Board chairperson

Illinois Department of Corrections

4) E. C/O JOHN DOE

Correctional officer

Stateville C. Center

5) F. C/o West

Correctional officer

Stateville C. Center

6) G. LT. Brown

Lieutenant

Stateville C. Center

7) H. Durrett

Sergeant

Stateville C. Center

8) I) WARDEN

Sergeant

Stateville C. Center

DeFendants

3 oF 3

9) J. C/O williams

   Correctional Officer
   Stateville. C. Center

10) K. C/O Montoya

   Correctional Officer
   Stateville C. Center

11) L. C/O Taylor

   Correctional Officer
   Stateville C. Center

12) M. C/O Baker

   Correctional Officer
   Stateville C. Center

13) N. C/O DeYoung

   Correctional Officer
   Stateville C. Center

III.   **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.   Name of case and docket number: _____ 15cv 6964 _____

B.   Approximate date of filing lawsuit: _____ August 7th 2015 _____

C.   List all plaintiffs (if you had co-plaintiffs), including any aliases: _____
_____ N/A _____

D.   List all defendants: Tarry Williams, Sarah Johnson, De-Young, Baker, Taylor, Montonia, Williams, Sgt. Warden, Sgt. Burrett, Lieutenant Brown, West, John Doe, John Baldwin, Pfister

E.   Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____ United District Court Northern District _____

F.   Name of judge to whom case was assigned: _____ Jorge L. Alonso _____ Honorable Judge

G.   Basic claim made: _____ Medical treatment / Cruel & unusual _____ punishment.

H.   Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _____ Still pending _____

I.   Approximate date of disposition: _____ Still pending _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

**V.     Relief:**

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.

That i be compensated monetary damages plus punitive damages For cruel & unusual punishment. $100,000

VI.    The plaintiff demands that the case be tried by a jury.  ☑ YES    ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief.  I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this **14** day of **November** 20 **16**

_Thomas Britton_
(Signature of plaintiff or plaintiffs)

THOMAS BRITTON
(Print name)

B-62376
(I.D. Number)

P.O Box 99
PONTIAC, IL 61764
(Address)

United States District Court
Northern District of Illinois
Eastern Division

Thomas Britton
                    Plaintiff

        vs.

Tarry Williams, Sarah Johnson,
De-young, C/O Baker,
Taylor, Montoya, Williams,
Sgt. Warden, Sgt ~~Durrett~~,
Lieutenant Brown, C/O West,
C/O John Doe, Acting Director
John Baldwin, Warden Pfister,

                                Defendant's..

Introduction
Jury Demand

This is a civil Rights Action Filed by Thomas
Britton Pro Se, A State Prisoner, For Damages
And in Junction Relief. under 42 USC & 1983
For Relief For Violations Of his civil Right's
under the Eight Amendment of the United
States Constitutional.

(1)

## Jurisdiction

The Court has Jurisdiction over Plaintiffs claims of violations of Federal Constitutional Rights under 42 USC § 1331 And 1343.

1) THE COURT has supplemental Jurisdiction over the Plaintiffs State Law Tort under USC § 1367.

2) Parties

3) The Plaintiff Thomas Britton, was incarcerated at Stateville Correctional Center at all times during the violations described in this complaint.

4) Defendant West, At all times Relevant was employed as a correctional officer At Stateville correctional Center, is sued in his individual capacity.

(2)

5) Defendants De-young, Montoya, Baker, Sgt-Warden, at all times Relevant were employed as Correctional officers at Stateville Correctional Center, are sued in their individual capacities.

6) Defendants Taylor, Williams, Sergeant Durrett, and Lieutenant Brown, at all times Relevant were employed as Correctional officers at Stateville Correctional Center, are being sued in their individual capacities.

7) Defendant Tarry Williams at all times Relevant was employed as the Warden of Stateville Correctional Center, is being sued in his official and individual capacities.

8) Defendant John Doe, at all times Relevant was employed as a Correctional officer at Stateville Correctional Center, is being sued in his individual capacity.

9) Defendant Acting Director John Baldwin, At All times Revelant were employed As the Acting Director OF All Illinois Department OF Corrections Facilities including but not limiting to Stateville Correctional Center, is being sued in his official And individual Capacities.

10) Defendant Sarah Johnson, At All times Revelant were employed As A member of the Administrative Review Board by the Director of the Illinois Department OF Corrections, is being sued in her official And individual Capacities.

11) Defendant PFister, At All times Relevant is the Warden OF Stateville Correctional Center employed by Illinois Department OF Corrections Director, is being sued in his official And his individual Capacities.

(4)

12) Facts

13) ON 7-23-14 Plaintiff came to F-House And was placed in cell #228 by C/O West, Upon Entering the cell i Noticed A Strong Smell of Mildew, I Saw pieces of brick literally on the Floor, the ceiling was leaking Water, there was cracks in the ceiling ; it Ran down Seperating the cabinet ; toilet/ Sink From the Walls, I Saw what was Known to be "black Mold" All over the ceiling + Wall down Along the toilet. I quickly explained All my Findings to C/O West who then Stated: I AM vary Aware of All of that, the last inmate in this cell was Almost electrocuted because water is Running by the outlet for the power. He Admitted that Cell #228 of F-house was labeled AS Condemned. He then Stated, I'm just doing my Job, i was told to put you in cell #228.

(5)

The Lieutenant And Sergeant know the cell is not livable but there is NO Room. I immediately wrote a grievance and showed my low gallery permit which prohibit's me from being on a gallery higher then 1 gallery not with standing i was using a crutch to walk & i was becoming sick just being & breathing & eating in cell #228. No inmate should have been placed in cell #228. Correctional officer West has a sworn duty to "Not" place inmates in harm's way when the danger is apparent.

14) Defendant's Lieutenant Brown, Sergeant Durrah, Correctional officers Williams & Taylor were solely responsible for placing ~~plaintiff~~ plaintiff in cell #142 and causing plaintiff to suffer an injury to his left arm and forces plaintiff to live with Roach infestation, Black mold, mice & Rodent's, Ants and spiders.

(6)

15) Lieutenant BROWN was the Lieutenant OF F-house and was in charge OF the Correctional OFFicers, C/O Taylor and C/O Williams and their actions. Plaintiff informed Lieutenant BROWN that cell #142 in F-house had mold, A Broken window that still had glass prutruding from inside the window pane but He nore Sergeant Durant would move Plaintiff to a safer cell. C/O Taylor and C/O Williams were the two correctional officers who placed Plaintiff Along with his belongings in cell #142 when they were informed by Plaintiff that the cell #142 had mold and a Broken window.

(7)

16) Sergeant Durrett Defendant was informed
by Plaintiff on 4/20/15 the exact same
day Plaintiff was placed in cell #142 of all
the violations of Health; safety; sanatation
that the cell #142 contained but was told
Nothing could be done. Plaintiff then
explained that the glass needed to be
cleaned up; out of the window but
again was told he would pass it on
but nothing ever happen.

17) Lieutenant Brown, sergeant Durrett, c/o Taylor,
and c/o Williams were all Responsible for
the constitutional violations Plaintiff had
to suffer and indure by placing Plaintiff
in cell #142 when they knew, were shown,
and still No one did anything to
protect Plaintiff from being injured on
5-1-15.

(8)

18) Lieutenant Brown, Sergeant Durrett defendant's, were aware that cell #142 was a danger to any inmate placed in that cell because on 4-11-15 (2) inmates names Murray and Mahr were living in cell #142 when one of them broke the window out and attempted to make home made weapons out of the broken glass. Tactical team was called, They Removed both inmates, and Retrieved the broken glass, incident Reports were Written, and Internal Affairs took pictures of the broken glass inside the window. 2 days later I Plaintiff and inmate Williams were placed in cell #142 when cell #142 hadn't even been cleaned up from mase, trash or glass. This violated Plaintiff Rights by placing Plaintiff in a unsafe environment with broken glass and mold that any person looking could see.

(9)

19) Plaintiff wrote a grievance describing the cell conditions and asking that the broken glass be removed and the broken window repair, the grievance was wrote the exact day Plaintiff was placed in cell #142 4/20/15. The injury occurred 5-1-15.

20) Defendant Montoya on 5-1-15 was called to cell #142 by Plaintiff's cellie McMurtry screaming for medical attention. Defendant Montoya came to Plaintiff's cell and was shown the injury to Plaintiff's left arm but instead of immediate medical attention Defendant told Plaintiff that he was about to go home another officer would have to deal with this because he was leaving early and would not stay writing incident report's

(10)

And doing PAPER WORK. He WALKed AWAY
SAYing he would tell Some one else!
THis was A direct violation OF STAFF Conduct
And I.DOC pRotocal.

21) DeFendAnt BAKer, WAS bringing the
garbage can's back in From emptying
them out And AgAin my cellie McMurtry
SCReamed out Medical emergency in
Cell #142. AFter 10 minutes of Calling
C/O BAKer came to PlaintiFF's cell
to see what was going on. ONce
PlaintiFF explain to DeFendAnt BAKer
that he was injured And Showed him
the blood on the towel And open
Wound DeFendAnt BAKer pRomised
to go call the NuRse. He ASKed
PlaintiFF why he didnt holler

(11)

out for medical Attention As soon As it happen And Plaintiff explained to Defendant Baker that Plaintiff had spoke to c/o Montoya who said he would send someone to Assist Plaintiff, Defendant Baker Response was, Montoya went home. 30 minutes or so later when no Nurse showed Plaintiff had his cellie Mc Murtry to call out Again for medical help And Again Defendant Baker showed up. Defendant Baker stated he called the Nurse And he was still waiting on them to get here. At that time i was starting to get faint and loose consiousness And Plaintiff begged Defendant Baker for medical help but was told the Nurse was coming.

(12)

40 minutes later the shift had changed, Defendant Baker never came back nor did i see a nurse on the shift Sergeant Warden, C/o Baker, and C/o Montoya worked 11 to 7 shift. This was a violation of Plaintiffs 8th Amendment rights to be free from cruel and unusual Punishment.. Sergeant Warden was the cell house Ranking officer but he never came to check on Plaintiff even after C/o Baker claim he told Sergeant Warden what had happen to me and Plaintiffs reason for screaming medical assistance.

22) Defendant De-young was doing count in F-house at 7:04 Am on 5-1-15 when Plaintiff stop Defendant Deyoung and explained my situation to him and explained how much pain i was

(13)

in well begging for him to call a med tec or nurse so my wound could be helped. After seeing my wound (injury) Defendant De-young said he would call a nurse. Instead of c/o De-young calling a medical personnel he just continued to count from cell to cell which took another 15 to 20 minutes. More then another hour or so passed by before my dellie McMurtry started to kick back on the door to help me get medical treatment. This time when Defendant De-young came back to plaintiff cell he was with the med-tec (medical technician) Shanell Barnett who said no one called her she was already in the F-house building and was

(14)

.just being told that Plaintiff was injured and Bleeding. Instead of Plaintiff being taken to Healthcare in a more Sanatary and clean invironment to be cleaned and bandaged up Plaintiff was Forced to Allow Med-tec Shanell Barnett to work on his wound through a Bird Feces, Rust and Filthy chuck hole of the cell door which was a medical risk of infection. Plaintiff rights were still continued to be violated by Defendant De-young. Grievance written 5-1-15

23) Plaintiff wrote a grievance on 5-1-15 not only describing the poor treatment he recieved for his injury this grievance written 5-1-15 described cell #142 living conditions and asked that all mjor violations be addressed to make cell #142 livable but the mold problem, roach infestation, mice + rodent problem's, ant's, spider's, went unanswered for my entire segregation time 6 months in cell #142 with

(15)

Plaintiff Fighting Roaches, Chasing mice back out the cell every day and trying not to breath in the mold and mildew that was wash away by Plaintiff but 2 weeks later came back in the exact same spot. I have been having migraine Headach's to this day which i complained of first after being placed in another Condemned cell LPKe #142 which was #228 in F-house as well. The cleaning of my injury was handled vary un-professional and it did'nt help with medical technician Shanell Barnett telling me to stop acting like a drama queen.

24) Defendant John Doe on 7-4-15 was the officer who was working the Segragation F-house yard when i called out to him explaining that i had to use the toilet

(16)

And. he Ask Plaintiff did i have to do #1 OR Number #2? I told him Number #2 And About 10 minutes later Defendant JOHN DOE came back to the tower window And told Plaintiff that he would have to hold his Bowel movement. Plaintiff explained to JOHN DOE that he couldn't hold it And Ask to Speak to A Lieutenant And was told by Defendant that, that was the Lieutenant who told him to tell me No. For the Record there is No porta potty out on Any of the Segragation YARds in Any of the CAges the hold inmates And there was Never Any porta potty on Segragation F-house YARd from the time this incident happen 7-4-15 until i left Stateville Correctional Center 8-10-16. I was denied my Right to Relieve myself which is A basic

(17)

And well established Human Right. This is A practiced Violation of inmates Rights At Stateville Correctional Center. In Plaintiffs grievance dated 7-8-15 i addressed All of the Violation's. I have indured And continued to induce while At Stateville C. Center, cell condition's, mold, Bugs, Roaches, Mice + Rats, Rusted Water, Leaking Ceiling's + Wall's, Bricks breaking And Falling down onto the bunks While Plaintiff was Sleeping, No Porta Potty on Any Segragation Yard in F-house, Plaintiff would like to be examined to make sure the brown water he was drinking or the mold has not somehow been Responsible for Migrain Headach's, Lack of energy & other health problems that come & go since being Forced into

(18)

the deplorable Living Conditions As if
Plaintiff WAs thrust into A third
World Country. THis WAs Cruel & unusual
Punishment 8th Amendment Violation.

25) Defendant Tarry Williams, is the chief
Administrative officer of Stateville correctional
center, This means Anyone, inmate or Employee's
that Are on stateville C. center ground's
Are subject to the Authority OF the
Warden (Tarry Williams). THe violations
of Plaintiff's Right's were the direct
Neglect of the Warden Terry William's
Not Full Filling his duty And Correcting
Violations of Health, SAfety & SAnatation when
Plaintiff WAs subject to being Forced
to Live in F-house when He Knew
or should have Known that Plaintiff
Had to deal with mice, Roaches, Rats,
Bird's, Ants, Spider's, Black Mold in
the cell's & showers, Plaintiff Wrote

(19)

· More then 10 grievances detailing the Living conditions that Plaintiff were dealing with through Emergency Grievance process only to have the Grievances Rubber stamped Denied with no explanation or solution to Addressing the Problem's. Most of the Grievances were more then Likely never Review by Warden Tarry Williams because the Warden's designated Assistant sign's his or her initial's on the side of his (the wardens) Name which is a direct violation of my Due process Right's and Equal Protection Right's For All Emergency Grievances to be Reviewed by the Warden unless he is unavailable. Grievances dated: 4/20/15, 5-1-15, 7-4-15 were Rubber stamped by the designee And

(20)

checked denied when those grievances were clearly an emergency. Plaintiff was injured on 5-1-15 by being cut opening up his left arm from a broken window in plaintiffs cell #142 having protruding glass sticking out of the window seal. That grievance was to check not an emergency; denied. Plaintiff was instructed to start the process over and send his grievance back down to the counselor. This was deliberate indifference, and violation of plaintiffs basic human rights.

26) Defendant Pfister was the warden of Stateville Correctional

(21)

Center when on 6-26-16 Plaintiff
Wrote a grievance detailing the Roach
infestation problem that plaintiff was
living with among other issues such
as, Rat's, mice, mold, Ant's; spiders to
only Recieve a exact same Response
as my other grievances dealing with
Living conditions such as, Every
effort is being made to Ensure that
wild life do not Enter F-house
when through John Howard Association
Report's monitoring Stateville Correctionnl
center from 2011 through 2016
Bird's are stated to have been a
problem for many years. They simply
do not enter F-house it is
proven that the Bird's have lived

(22)

in F-house and the Administration has not made a true effort to Remove the birds. The Administration stated on my living conditions Grievances that: someone comes to F-house and spray the cells of F-house once a month which if someone is signing any legal document ~~stating~~ stating that someone comes to F-house to spray are committing a felony by forging documents because Plaintiff spent from 2011 of August through 2013 Living in F-house, Then plaintiff left F-house for several months then came back to F-house under segregational status, Plaintiff left again for a few weeks

(23)

then came back Again to F-house, Plaintiff has spent atleast 4 out of the 5 years Plaintiff was locked up At Stateville C. Center so i would know if some-one with A Big silver CAN came Around once a month. THERE WAS No one who ever Spray once A month, twice every six month's, maybe once every eight month's And even then segragation cells was never spray while i Plaintiff was Living in F-house. THere are camara's that was in place in F-house to See the entire inside including All the cells, i Request the Footage of F-house ████ camara's to prove you will never see Anyone spray once A month. From the years of 2011 through 2016 i Request All the Footage.

(24)

Defendant Pfister is and was not trying to make living conditions better at Stateville c. center, He knew or should have known that there is no porta potty on F-house segregation yards because plaintiff have sent letters, grievances & spoke directly to Defendant Pfister about those issues along with the infestation Roach problem, mice, ants, birds, mold and the conditions of the cells as noted by & through John Howard Associations yearly Reports that these violations were brought to the Administration's attention but Defendant's through Neglect, disregard for Human Life and

(25)

Being Deliberate indifferent to the needs of the Human beings locked up inside of Stateville C. Center chose not to their Jobs, Defendant Pfister could have & should have protected Plaintiff from Health Risk instead of turning a blind Eye. Defendant Pfister is the Warden of Stateville C. Center and on 6-26-16 Plaintiff wrote a Grievance detailing how much Roach infestation Plaintiff has been dealing with and Plaintiff showed counselor/ correctional officer Graves several bags of Roaches that were still Alive and on the Grievance witness Graves gave a statement that He confirms seeing Roaches in Plaintiff

(26)

Cell #205. Plaintiff wrote a letter again detailing the amount of Roaches Plaintiff has been dealing with, including but not limited to, Bugs, mice, mold, leaky ceiling, Bird Feces on the chuck holes that Plaintiff Food have to travel through for plaintiff to Recieve his Food. The letter that C/O / Counselor Graves signed is a direct Absolute Proof that F-house should have been closed down years ago. Plaintiff complained about Something moving around inside his Right ear but after complaining Plaintiff Recieved <u>No</u> treatment. A letter was written by Plaintiff to Defendant Warden Pfister but Nothing was done and the letter was never answered.

(27)

27) THEN ON 6-27-16 PlAintiFF ComplAined
OF Not being Able to sleep, HeadAch's,
Something moving Around in plAintiFFs
Right eAR, AND AFTER TAlKing to
C/O AWAD OF F-house 3 to 11 Shift
i WAS told to put my cloth's on
He WAS taking me to Health CARe.
At Health CARe ON 6-27-16, i WAR
thReAted by A NuRse/med tec NAme
JOHN DOE who WAS AFRican desent,
NURse JANe DoE who WAS Also present,
And NuRse/med tec HowARD who Actually
████████ did the treatment oF
PouRing PAROXide in my Right eAR,
WARm WAter AND using Some type
oF pump to Remove whAt i

(28)

T. Thought was (2) Roaches but once i Recieved my medical Records it stated that (3) Roaches were pulled out of my Right eAR. IF some one spray's once A month How is this even possible. I Am still Affected by that Traumatic memory oF seeing those Roaches being pumped out oF my eAR. Not only has JOHN Howard Ass. been telling Stateville Correctional Center to correct All of the Health violations, Living Conditions violation's, A Law suit/injunction was Filed on Stateville C. Center by unknown legal intity to Force Stateville Correctional center to Fix All of the violations but F-house was

(29)

unrepairable and Condemned to further prove that all of my Grievances were not made up stories and Plaintiff's Health & Safety was being violated for years. The Wardens of Stateville C. Center and all other Defendant's knew of all these violations to Plaintiff's Rights but chose to turn a blind eye while Plaintiff was forced to suffer with no voice.

28) Defendant Sarah Johson, is a member of the Administrative Review Board That investigtes Grievances, Have the Authority to over turn decision's made by Wardens of any correctional Facility in Illinois department of corrections. Plaintiff sent several Grievances dealing with Living conditions and the injury to Plaintiff's

(30)

. LeFt ARM From A broken window iN Plaintiff's cell. Although Plaintiff Sent more then Several Grievances plaintiff will Address (2) that will Show how Defendant SARAh JohNson A.R.B committee Person titled "Office of inmate issue's" is not only Bias. Defendant SARAh Johsson did Not investigate (2) Grievances that were wRote About Living condition's, Rat's, mice, Bird's, mold, Ant's, spider's, And An iNFestATioN OF RoAches All iN F-house OF STATeville c. Center. I Plaintiff Grieved that A was denied A basic human Right to Relieve my bodily Function's OF WAste. I described As best i could the "John Doe" who worked in F-house tower segragation yard, THe time, the date & location wAs

(31)

Provided in Plaintiffs Grievance but yet and still Defendant SARAH JOHNSON instead of calling Stateville c. Center and asking which officer worked F-house tower 7-4-15 she dismissed my issue by stating: At the time of the Grievance 7-4-15 inmates were allowed to leave segragation yard to relieve themselves but are not allowed to return to yard. This also is a violation of Plaintiffs Right to exercise and have time outside the cell with fresh air. What Defendant SARAH Johson is undoubtedly concurring with is, an official of I.Doc may violate Plaintiffs constitutional Rights of 5 hours a week exercise to not violate

(32)

.Plaintiff's Right to have and use A workable toilet system when and where it is necessary As that is A Basic Human Need. Defendant SARAh JOHNSON Restates every thing that WAS told to her by Stateville C. Center Administration And to Further prove that Defendant SARAh JOHnson Never did AN independant investitation into Plaintiffs Allegations, After defendant SARAh JOHnson talk to whom ever told her that Stateville C. Center F-house Segragation yard had A porta potty Recently installed she inserted that untruth in her decision without ever investigating to see independantly was there ever

(33)

A porta potty on seg yard in F-house
And Defendant SARAH JOHNSON would
have known that there has never
been a porta potty installed in any
of the 6 or 7 cages on F-house
Segregation yard. From 8-10-11 until
8-10-16 F-house never come to let inmates
use the toilet nor is there anyway
for inmates to Relieve themselves.

In my Grievance dated 7-4-15 Defendant
SARAH JOHNSON stated Plaintiff never
Stated any specific incident Regarding
mice, Bugs, Birds within the time frame
but this is Also A "lie", In Plaintiff
Grievance Plaintiff clearly states that
Plaintiff is living with mold in his
cell, Roaches, mice, Ants, spiders, Birds

(34)

that leave Feces on plaintiff chuckhole And on 5-1-15 Defendant Recieved A grievance About the same issue As of 7-4-15 including Plaintiff Cutting his left ARm on glass that should Never have been there And Defendant Returned the grievance dated 5-1-15 Stating go back to the counselor First when this is Not what the 720 ILCS 504. Exhuastion of State Remedies Require. Defendant SARah Johnson has been deliberately indifferent to All Plaintiffs grievance's And Request For help.

29)        CLAIMS OF RELIEF

(35)

30) The failure of defendant Tarry Williams to personally read and investigate Plaintiffs allegation's on grievances dated 4/20-15, 5/1/15, 7-8-15 ; 7-23-14 violated Plaintiff 8th Amendment Right to be free from cruel ; unusual punishment, that could have prevented Plaintiff from harm ; future injury but Defendant chose to disregard the risk that was brung to Defendant's attention which caused him to be deliberately indifferent.

31) If not for the failure of defendant Sarah Johnson refusal to unbiasly and independantly investigate Plaintiff's many Grievances Plaintiff would not had to in dure Health ; safety Risk's, injury to Right ear, (3) Roaches being removed 6-27-16 ; Living conditions. Defendant

(36)

violated Plaintiff 8th Amendment making him suffer cruel & unusual punishment which made Defendant Sarah Johnson deliberate indifferent to Plaintiff's Health & Sanatation.

32) Defendant's c/o Taylor, c/o Williams place Plaintiff in cell #142 on 4-20-15 after Plaintiff made Defendant's c/o Taylor and c/o Williams aware that cell #142 had mold, mase smell, and a broken window and Defendant's disregarded Plaintiffs Health and Safety which cause Plaintiff cruel & unusual punishment 8th Amendment which made Both Defendant's deliberate indifferent toward Plaintiff Constitutional Right's to be Protected.

(37)

33) Defendant's Lieutenant Brown and Sergeant Durant were deliberately indifferent to Plaintiff's Health ; Safety ; Sanatation By After being told of All of Cell #142 Health Concern's and glass that could Cause Plaintiff injury Defendant's Durant And Brown had the Authority to move Plaintiff but turned A blind eye to Plaintiff Suffering From being in direct contact with mold And injuring himself From Broken glass that All Defendant Officers were told About. The Plaintiff suffered Cruel ; Unusual Punishment.

34) Defendant's De-Young, C/O Baker, C/O Montoya, And Sergeant Warden were deliberately indifference to

(38)

Plaintiff's medical Need once Plaintiff made defendants AWARE OF A cut on his Left ARM FROM glass that WAS left in the window AFTER they were Fully AWARe before placing Plaintiff in cell # 142. Plaintiff showed Defendant's De-young, montoya, Baker, the Blood & cut to his left ARM And no one called A nurse putting Plaintiff life in jeopardy And causing cruel & unusual Punishment AN 8th Amendment violation. THey should have called A nurse And Plaintiff's wound injury should have been treated instead it to Almost 3 hours FoR Plaintiff to Recieve treatment. DeFendant's were Deliberate indifferent to plaintiffs medical Needs.

(39)

35) Defendant West Placed Plaintiff in Cell #228 Although Plaintiff informed Defendant West that the cell #228 was unlivable and should be condemned. Defendant West was deliberate indifference to Plaintiff Health, Safety & Sanatation Rights which caused the plaintiff Cruel & unusual Punishment Violating Plaintiff's 8th Amendment.

36) Defendant John Doe was deliberately indifferent to Plaintiffs Constitutional Rights And Basic Human Rights by not letting Plaintiff off the segragation yard to Relieve himself instead causing Plaintiff to defecate on Himself on the yard and left on the yard All 5 hours after. Defendant knew or should have

(40)

.Known Plaintiff couldn't hold his Bowels For 5 hours After being Informed Plaintiff had to Relieve himself. This caused the Plaintiff Cruel & unusual Punishment.

37) The Defendant Acting Director John Baldwin was put in charge of all I.Doc employee's, Correctional officer's, And the Administrative Review Board members. Although Plaintiff wrote many grievances About the living condition's of F-house of Stateville C. Center, Coupled with the John Howard Association of Illinois yearly Negative Report of F-house Living condition's & Now the Recent Ruling condemning F-house Defendant John Baldwin

(41)

Knew or should have known that placing Plaintiff in F-house or keeping F-house open & allowing inmates including Plaintiff to be housed there He was putting Plaintiff's Health, Safety in Jeopardy by not Addresses grievances, complaints and letters that the Plaintiff have Sent directly to Defender John Baldwin. Defendant was deliberate indifferent to Plaintiff constitutional Right to be Free from cruel & unusual Punishment.

38) Defendant PFister is the warden of Stateville C. Center, He is Responsible For Running every ~~the~~ the ontire Facility & every employee that work at Stateville

(42)

C. Center Including but Not limited to the Condition of the entire Correctional Facility. Defendant Pfister Knew or Should have Known that by Keeping F-house open to house inmates including Plaintiff that Defendant was putting Plaintiff's Health, Safety & Sanatation At Risk. Defendant was deliberate Indifferent to the Health of Plaintiff Causing Plaintiff Cruel & Unusual punishment.

## RELIEF REQUESTED
### JURY DEMAND

WHEREFORE, Plaintiff Request that THE COURT grant the Following RELIEF:

(43)

1) THAT the Negligence OF DefendANT's JOHN BALDWIN, SARAh JOHNSON, WARDEN TARRY williams AND WARDEN Pfister, violated the PlaintiFF's Rights UNDER the Eight Amendment to the UNited States CONStitutioN, AND CONStitute's the TORT OF Negligence UNDER State Law.

2) DefendANT's TARRy williams AND Pfister Failure to take Action to ENsure that Plaintiff's Living Condition's were OF Constitutional Standard And the Health, SaFety AND SANatation RequireMent's were FullFilled At All times.

3) Defendants TARRy williams, PFister AND JOHN BALdwin Actions OF Failing to Fix, close OR move inmates out OF F-house in Stateville C. Center KNowing the Violation's Noted in PlaintiFF's grievance

(44)

WAS APPARENT WAS deliberate indifference sub-
stanciated cruel & unusual punishment clearly.

(A) Issue an injunction ordering Plaintiff
current institution to Appoint a Specialist
to run the appropiate test to check
Plaintiff for Lead Poisoning, mold
ill effects, and Plaintiff's right ear
for any lingering effects that having
(3) Roaches pumped out of his ear
could have on his health.

4) Carry out without delay the treatment
directed by such injunction.

5)     Award compensatory damages
       in the following amounts:

1) 10,000 Jointly and severally against
   Defendant's Tarry William's, Pfister,
   John Baldwin and Sarah Johnson for
   Failing to protect Plaintiff Along

(45)

. with the Rights of Plaintiff instead of Willfully Causing Plaintiff Cruel & Unusual Punishment.

2) 10,000 Jointly And Severally Against Defendant's Baker, Montoya, De-young, And Sergeant Warden For prolonging if Not totally Neglecting & denying Plaintiff medical Emergency Assistant.

3) 10,000 Jointly And Severally Against Defendant's West And John Doe For Refusing to Follow the Correct Protocal And Regulations instead of exposing Plaintiff to Health violation's And the Safety of Plaintiff.

4) 50,000 Jointly And Severally Against Defendant's Lieutenant Brown, Sergeant Durrett, C/o williams And c/o Taylor

(46)

· FOR placing Plaintiff in A Condemned Cell #142 when they Defendant's knew that it was A Risk For defendant's to Place Plaintiff in Cell #142 but disregarded Plaintiff's Right's which cause them to be deliberate indifferent.

5)     AWARD Punitive damages in THE Amount OF:

A) 20,000 each Against John Baldwin, Tarry Williams, And PFister

B) 10,000 each Against Defendants C/o Baker, C/o Montoya, C/o De-young, Sergeant Durrett, And Lieutenant Brown.

C) 10,000 each Against Defendants Sergeant Warden, C/o Williams, John Doe And C/o Taylor

(47)

D) GRANT other Such Relief As it MAY
   APPeAR that the Plaintiff is entitled.

CERTIFICATION

UNDER PenAlty OF perjury, I
certify that the Complaint
And the Facts therein Are
True to the best OF my
Knowledge, inFoRMATioN And
Belief. I understAnd that
iF this certificAtion is not
Correct, I mAy be subject
to SAnctions by the Court.

Signed this 13 day of NOVEMBER
2016.

x  Thomas Britton
      THOMAS BRitton #B-62376
      P.O BOX 99
(48)  PONTIAC, IL 61764

## Exhibit's

1) Exhibit #1 is the Response from the A.R.B Sarah Johnson dated 10/7/14 # Grievance #2220 dated 7/23/14 Exibit 1-A & 1-B

2) Exhibit #2 Response From ARB Sarah Johnson dated 5/20/15 Exibit 2-A Grievance #1724 Actual Grievance

3) Exhibit #3 through 5 Medical Report's / Injury Report dated 5/1/15

4) Exhibit #6 is cell History of Plaintiff, Plaintiff cell mate's Dates, And cell #142 Also the (2) inmates who occupied cell 142 2 day's before date ·4/11/15

5) Exhibit #7 is Grievance #1813, grievance written by Plaintiff 7-A, 7-B, 7-C & 7-D

6) Exhibit #8 is a medical Report dated 6/27/16 OF ~~Roach~~ 3 Roaches that were Removed From Plaintiffs ear.

7) Exhibit #9 is Report From Sarah Johnson ARB member, dated 4/7/16 About "Living Conditions" in F-house Stateville

8) Exhibit #10 Response From Sarah Johnson A.R.B member dated 5/18/16

9) Exhibit #11 Affidavit From Stateville c. center inmate describing the Living Condition's in F-House cell's.

10) Exhibit #12 is memo From counselor Graves dated 7-29-16 informing Plaintiff that His grievances Are Forwarded to the Grievance officer About the Roaches He was shown by Plaintiff in his cell #205

<u>Exhibits</u>                    Pg. 2 of 2

11) Exhibit #12-A) Letter written in the Form of an Affidavit with Counselor Graves signature verifying Plaintiff claims of bag's of Roaches; infestation.

12) Exhibit #13  Memo From Counselor Jamie Simmons of Pontiac Responding About grievances that were pending at Stateville c. Center.

13) Exhibit #14  Grievance dated 6-26-16 About Living Conditions. Still pending... Evidence

14) Exhibit #15  Grievance dated 6-27-16 About Roaches Found in Plaintiff's Right ear. Still pending... Evidence

15) Exhibits #16, 16-A, 16-B, ~~that~~ is 6-page grievance About Living Conditions. Health Violation's

16) Exhibits #17, 18, 19, 20, 21, 22  Are John Howard Association of Illinois monitoring visit to Stateville c. Center detail Health; Safety Violation's including but not limited to Mold, Roaches, Birds, Etc. Dated April 2013

For the Record, F-house (Round House) in Stateville is Now closed For multiple Health Violations over many year's!

*EXHIBIT (P)*

ILLINOIS DEPARTMENT OF CORRECTIONS

**Administrative Review Board**
**Return of Grievance or Correspondence**

*F230*

Offender: _Britton_ _Thomas_ _B62376_
          Last Name    First Name    MI    ID#

Facility: _Stateville_

☒ Grievance: Facility Grievance # (if applicable) _____ Dated: _7/23/14_ or ☐ Correspondence: Dated: _____

Received: _8/15/14_ Regarding: _Conditions of cell 228_
          Date

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

☒ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☒ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal. *if timely*

☐ Provide dates of disciplinary reports and facility where incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:   Administrative Review Board
Office of Inmate Issues
1301 Concordia Court
Springfield, IL   62794-9277

**Misdirected:**

☐ Contact your correctional counselor regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to:  Illinois Prisoner Review Board
319 E. Madison St., Suite A
Springfield, IL   62706

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____.
                                              Date

☐ No justification provided for additional consideration.

**Other** (specify): _____

_____

Completed by: _____Sarah Johnson_____     _Sarah Johnson_     _10, 7, 14_
                    Print Name                  Signature            Date

Distribution:  Offender                  Printed on Recycled Paper        DOC 0070 (Rev.4/2013)
               Inmate Issues                    *(49)*

ILLINOIS DEPARTMENT OF CORRECTIONS

# OFFENDER'S GRIEVANCE

| Date: 7/23/14 | Offender: (Please Print) THOMAS BRITTON | ID#: B-62376 |
|---|---|---|
| Present Facility: Stateville C. Center | Facility where grievance issue occurred: Stateville C. Center | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [x] Other (specify): Inhumane living
- [ ] Disciplinary Report: ____/____/____ Conditons/ being placed on a condemned cell
  Date of Report          Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete: Attach a copy of any pertinent document** (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: ON 7-23-14 I inmate BRITTON WAS TRANSPORTED FROM E-house to F-house. For seg status. After being searched And given A seg jump suit I was then taken up to 2 gallory cell #228 And placed on the cell. Upon Entering the cell #228 I immediately saw that the cell was inhabitable, so i informed the C/o who placed me on cell 228 (name unknown) that the paint was peeled & pealing off the wall, the ceiling had a crack in it, chunks of ceiling was breaking off & falling up to the top bunk even through the side of the top bunk unto my bottom bunk. the ceiling had moldew stains with leaking water

Relief Requested: _____

_____

_____

GRIEVANCE OFFICE
JUL 31 2014
STA# 2226

- [ ] Check only if this is an **EMERGENCY** grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____
Offender's Signature        ID#        ____/____/____
                                                Date

(Continue on reverse side if necessary)

| | **Counselor's Response** (if applicable) | |
|---|---|---|
| Date Received: ____/____/____ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

Response: _____

Inmate Issues
AUG 15 2014

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

running down from the ~~ced~~ cieling to the sides of the wall down down to the floor! The smell of mildew & an order i can not describe had me sick to my stomach! By the outlet where i was going to plug my fan up was running with water which cause that to be a dangerous situation and deny me a chance to atleast get some fresh ~~air~~ air blowing and to relieve myself ~~of~~ from the heat (humidity)! This unknown c/o looked in the cell and stated of do look "fucked up" but that's the cell Mrs. Rabider assigned me to so he could not change it. I asked him to tell Lt. Rahemi who was the cell house Lt. at the time could he put me in another cell and the c/o replied "Everybody know's about this cell and that it smells like mildew but they keep putting people in there so he walked off and told me to write a grievance. This c/o not only looked in & saw the cell for himself but he smelled the mildew from outside the door but refuse to help me & prevent any real potentially dangerous medical situation. This c/o violated staff conduct and condition of confinement, health & safty & sanitation. By placing me in that cell #228 my health was put at risk and possebly my life! In violation of 03.02.108 I ~~was~~ was placed in a condemned cell and to prove the cell was condemned check F-house cell log, right now as of 7-27-14 it has no inmates in it and it is restricted from use of any kind. I have requested that i be sent to health care through sick call request and through med techs unknown, on their rounds and through F-house staff including Lt. William's who worked on saturday morning and Sgt. Durant who is the cell house 7 to 3 Sgt. I get treatment for my (Siatic nerve) although it is not working meaning (medication) and the morning nurses and night time nurses say the same thing: when you are called for sick call they will refer you to see a doctor. As of 7-27-14 i have not seen any one for being in a mildew condemn cell, having to eat 3 meals in that cell sleep in that cell, wash up & breash my teeth in that cell, constantly wiping water up in that cell. This

(1-13)

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: 7/23-14 | Offender: (Please Print) Thomas Britton | ID#: B-62376 |

Present Facility: Stateville C. Center | Facility where grievance issue occurred: Stateville C. Center

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [x] Other (specify): Being placed on 2 gallery with a crutch & in a m(dew) & condemned

- [ ] Disciplinary Report: ____/____/____
  Date of Report                    Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:**

**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: Higher then 1 gallory. According to A.R. 504 And M.D. obars: Request that all permits be honored especially low gallory permits. Only then About 7:00 pm was i moved out of cell #228 And put in cell #142. Lately i have been feeling light headed, nauseated and have been having headachs that is as close to a migrain as it comes. This is and was intentionl which is a violation of the 8th Amendment cruel & unusual punishment, and deliberate indifference. I had a equal protection right to be placed in a livable & saft cell like every other inmate in seg status. My Health was

Relief Requested: _____

GRIEVANCE OFFICE
JUL 31 2014
STA # 2220
pg2

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____
Offender's Signature        ID#        / / Date

*(Continue on reverse side if necessary)*

| **Counselor's Response (if applicable)** | |
| Date Received: ____/____/____ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
| Response: | | |

Inmate Issues
AUG 1 5 2014

put at Risk because Nobody wanted to do their Jobs.
I Ate in that cell. I breath the toxic Air of mildew
For more then 24 hours in that cell, the STAFF conduct is
poor in F-house Along with the Living conditions. This
was ~~totall~~ uncall For ; should have been prevented.
I have to stress the fact ; have a low gallery permit For
more the A day to get it honored. This is unprofessionalism
and intentional. I Ask ; found out that the C/o Name
is question is told to me to be C/o west of 3 to 11 shriff
that works 2 gallery 5 days a week He saw my crutch
And was told by inmate britton that inmate Britton
earlier had just Fell down A Flight oF stairs From
9 gallery to 7 gallery but C/o west still put me in
the cell #228.



This is the original grievance

I have the copies for my File,


please Respond ; send back,

To Britton B-62376

ILLINOIS DEPARTMENT OF CORRECTIONS

EXHIBIT (2)

F142 

## Administrative Review Board
## Return of Grievance or Correspondence

Offender: _Britton_ _Thomas_ _B62376_
 Last Name                    First Name              MI        ID#

Facility: _Stateville_

☒ Grievance: Facility Grievance # (if applicable) _(2)_ Dated: _4/20/15 & 5/1/15_ or ☐ Correspondence: Dated: ____
Received: _5/13/15_ Regarding: _Cell F-142 conditions_
 Date

---

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

☒ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☒ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal.

☐ Provide dates of disciplinary reports and facility where incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information.  Please return the attached grievance or correspondence with the additional information requested to:  Administrative Review Board
Office of Inmate Issues
1301 Concordia Court
Springfield, IL  62794-9277

**Misdirected:**

☐ Contact your correctional counselor regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee.  If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to:  Illinois Prisoner Review Board
319 E. Madison St., Suite A
Springfield, IL  62706

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____.
 Date

☐ No justification provided for additional consideration.

**Other** (specify): _____
_____
_____

Completed by: _Sarah Johnson_   _Sarah Johnson_   _5, 20, 15_
 Print Name                          Signature                     Date

Distribution:  Offender
Inmate Issues

(52)

Printed on Recycled Paper

DOC 0070 (Rev.4/2013)

(2-A)

F 142

## ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: 4/20/15 | Offender: (Please Print) THOMAS BRITTON | IDe: B-62376 |
|---|---|---|

| Present Facility: STATEville C. Center | Facility where grievance issue occurred: |
|---|---|

**NATURE OF GRIEVANCE:**

1724

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☐ Medical Treatment
- ☐ ADA Disability Accommodation
- ☐ HIPAA
- ☑ Other (specify): Housed in Condemned Cell #142, mold on wall's (2) Broken Window glass everywhere

- ☐ Disciplinary Report: ____/____/____
  Date of Report          Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON 4-13-15 i was moved from cell #350 in F-house to F-142. upon entering cell #142 i could tell walking in that it had A strong smell of (MASE) AND i saw that one of the frames in the back window were broken out & shattered inside the cell As well As still in the window frame. WAS sharp pieces of protruding glass that was sticking out. I informed c/o TAYLOR of 7 to 3, SGT. DurAnt & Lt. BROWN About these inadequate living condition's AND

**Relief Requested:** That i be checked for Lung problem's & any problem's that mold causes, that i be put in a cell that is safe & sanAtary & that i be paid $5.00 A day (7 days) AND 1,000 every day Nothing is done to help me.

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Thomas Britton | B-62376 | 4, 20, 15 |
|---|---|---|
| Offender's Signature | IDe | Date |

(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

| Date Received: ____/____/____ | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. |
|---|---|---|

Response: _____

RECEIVED

ADMINISTRATIVE
REVIEW BOARD

WAS told by All Three STAFF that i would Recieve some cleaning supplies, the window would be Repaired so that it would be safe & the glass picked up. As of 4/20/15 1 week later nothing has been done, I haven't Recieved Any disinfect to wipe the walls, Floors & Bed Railing to Remove the (MASE SPRAY) NOR have the window been Repaired to Stop Cold Air From Coming in And the broken glass is still everywhere Along with the glass sticking out of the window frame that is vary dangerous. Over the bars by the window is a big patch of Mold that i know is a danger to my lungs, air & Health. All these issues i Report to C/O's every day but nothing is being done to help make cell#142 in F House livable And safe. I have been experiencing having Shortness of breath, Light headed & Headachs. I don't know if if is from the MOLD, the Cold air coming through the window or the mase but i am surely not in good health! I want to put something over the window but the C/O's And SGt & Lt. tell's me that i would Receive A ticket for obstruction of view. I am Already dealing with mice running in & out of my cell #142 & Roaches that Are to many to count I am being put in An UNSANATARY cell #142 that is Unhealthy And UNSafe to live in. My Life is being Jeopardized because the C/O's Are being to lazy to do their job's And the SGt. Durant And Lt Brown of 7 to 3 Shift don't care what happen's to An inmate or the Health of Any inmate in F-house. This is Cruel & unusual punishment! This Neglect & deliberate indiffrence is A direct threat to the health & safety of inmate Britton # B-62376 in violation of My Right to be house in A Safe & livable Cell & Environment!

Offender Name: Butler                                    ID#: B62376

Date of medical examination: 5-1-15   Time: 900   ☒ am ☐ pm   Physician Contacted: ☐ Yes ☒ No

S (Subjective Findings): "I was trying to get this broken glass out
of my window so I wouldn't get a ticket and
I cut my arm"

O (Objective Findings): A&O x3  Small Superficial Laceration
Noted to ⓡ arm  ∅ active bleeding Noted @ this
Vitals: T _____ P Not medically Needed  Tetanus  No documenta
Time.                                                            Noted

A (Evaluation of Injury): laceration to ⓡ arm

P (Treatment and Follow-up): ① Cleansed c̄ NS, bacetracin applied c̄ band-aid
② f/u c̄ HCU PRN   Offender will be scheduled for Tetnus
injection

Disposition of patient:
☐ Return to assignment   ☐ Housing Unit   ☐ Lay in   ☐ Infirmary   ☐ Segregation
☐ Off-site referral for treatment (Destination) _____

S. Barlett                                S Barlett
Print Name of Person Completing Form                Signature
CM                                        5-1-15
Title                                     Date

## To Be Completed By Physician

I have reviewed this report and would like to see this offender: ☐ Immediately  ☐ Next Sick Call  ☒ PRN

LWPac                        RBpc                      5-1-15
Print Physician Name          Physician's Signature      Date

Side 2

(54)

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Injury Report

Offender Name: _Britton_                                    ID#: _B62376_

Age: _____ Date of Birth: _____ Sex: _____ Race: _____

Date of Injury: _____ Time of Injury: _____ ☐am ☐pm Location: _____

How did the injury occur? _Broken glass in window of cell._

Was it witnessed by staff? ☐ No  ☐ Yes (If yes, please list names)

**Location in facility:**

☐ LTA (gym, basketball, football, etc.)

☐ Group (therapy)

☐ Housing Unit (cell, dayroom, tv room, etc.)

☐ School (classroom, library)

☐ Kitchen

☐ Other _____

**Type of Injury:**

☐ Sports

☐ Assault

☐ Job Related

☐ Non-job Related

☐ Self-inflicted

☐ Fight

Signature                    Title _CM_          Date

**(Medical Report on Reverse Side)**

(55)

Side 1

Distribution:   Offender Medical File

DOC 0313 (Eff. 07/2006)
(Replaces DC-N 111-1311)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

**Stateville Correctional Center**

Offender Information:

Last Name: Britton  First Name: Thomas  MI: ___  ID#: B62376

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 4/15/15 | RN Note | |
| @ 1105 | I/M not seen in HCU for physical due to level 4 lockdown ——— | DJ~ |
| 5-1-15 900/A | S: I was trying to get this broken glass out of my window so I wouldn't get a ticket and I cut my arm O: A: P: See Injury Report _Britton_ | |

STATEVILLE CORRECTIONAL CENTER

*Exhibit 6*

FROM THE DESK OF.....................

C. HARRIS
*********************

CORRECTIONAL COUNSELOR
*********************

DATE: 6/11/15
TO: Britton B62376        F142
SUBJECT: various

Cell history

4-23-15  to  present    MCMURTRY (2nd cillie)

4-13-15  to  present    you (Britton)

4-13-15  to  4/22/15    Williams (first cillie)

4-11-15  to  4/11/15    Murray

4-9-15  to  4/10/15    Rodriguez

4-9-15  to  4/9/15    Thomas

3-11-15  to  4-11-15    Mahr

2-3-15  to  4-7-15    Ford

(57)-

**ILLINOIS DEPARTMENT OF CORRECTIONS**

## OFFENDER'S GRIEVANCE

| Date: 5-1-15 | Offender: (Please Print) THOMAS BRITTON | ID#: B-62376 |
|---|---|---|

| Present Facility: Stateville C. Center | Facility where grievance issue occurred: Stateville C. Center |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify)

- [ ] Disciplinary Report: _____/_____/_____
      Date of Report        Facility where issued

**1813**

> **Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON OR About 4-10-15 OR 4-13-15 MYself And inmate William's who was my cellie in F-house cell #350 population was moved from cell #350 to segregation status pending the out come of a disciplinary ticket to cell #142 of F-house. Upon placing our mattesses in the cell I as well as inmate William's informed C/O Taylor of F-house 7 to 3 shift that the cell reaked of MASE and was trashed badly. Apon Further investigation me & William's Noticed that the lower glass at the bottom of the left side

**Relief Requested:** THAT I be given the medical treatment MY injury require, I be given a shot FOR bacteria or infection, THAT ALL C/O's + medical staff involved be disceplened And I be compensated (monetary damages) 2,000 A day.

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Thomas Britton | B-62376 | 5,1,15 |
|---|---|---|
| Offender's Signature | ID# | Date |

*(Continue on reverse side if necessary)*

| **Counselor's Response** (if applicable) | | |
|---|---|---|
| Date Received: _____/_____/_____ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
| Response: | | RECEIVED |
| | | ADMINISTRATIVE REVIEW BOARD |

WAS completely broken out all except 3 or 4 big sharp
pieces protruding out from diffrent parts of the frame of the
window. There was vast amounts of shattered glass inside
the bar's ; where the window's opened up at. I saw 4 or 5
big pieces of glass also just sitting there, these pieces were
hazardous to me ; my cellie because someone could easily use
them as weapons. This was told to C/o Taylor, C/o Patterson,
Sgt. Durant ; C/o William's At the time. Me ; William's
~~then~~ placed our mattresses in cell #142 and once we were stripped
searched ; placed in #142 prementily. On or about 4-10-15 I
Thomas Bretton B-62376 wrote an emergency grievance discribing
the condition of cell #142 in full detail. I wanted to make
sure it was documented that the window was already broken out.
Every C/o I have named in this grievance including but not
limited to C/o D. Young was told ; shown the window but
gave this response: Sgt. Durant ; Lt. Brown Already knows
About the window. The day's were getting colder ; colder
because on 4-9-15 the heat in F-house was completely cut
off. The hole in the window made it feel like it was the
winter time inside the cell. On 4-23-15 the heat came back
on. I complained about all the glass, the smell of mase
for A whole entire 8 days. I ask Lt. Brown, Sgt Durant,
C/o D. Young for a blanket ; cleaning supplies but no one
gave me anything at all! Talk to C/o Conley of 3 to 11
shift ; told Lt. Sullivan i needed cleaning supplies ; A blanket
because the window was broken out ; I was told there wasint
any blanket's avayable for me. I complained about the broken
window ; the glass everywhere but nothing was never did to
insure myself ; my cellie would be house in a safe ;
livable Environment!!! On 5-1-15 I felt since no one was
doing anything about the broken window, glass everywhere ; sharp
pieces stcking out from inside the frame of the window. I would
clean it myself. Also the fact that stateville c. center was
on lockdown and I was under the impression that the (tact
team) would be shaking F-house down this morning. So at
5:30 am 5-1-15 i started cleaning the big pieces of

(A)

MONTOYA OF 11 to 7 shift on (5-1-15)
20 minutes to come and check on the
Reason why my cellie MC MURTRY was screaming
For A medtec saying this was an emergency.
I told him what happen ; showed him my
ARM ; the way i was bleeding Although i had
A towel compressed adding pressure on my
left ARM to slow the bleeding. C/O MONTOYA
then went back to the SGT. office where
SGT. WARDEN was at. I waited for
ANOTHER 20 minutes before i had my cellie
to start calling again for medical Attention
in cell #142. At this time C/O BAKER was
bringing the garbage cans back in the cell House
Rolling them past the tower ; placing them
back under the stairs. SGT. WARDEN came out
to help C/O baker, my cellie called out to
them screaming emergency in cell #142
but SGT. WARDEN kept walking back to
his SGT. office. C/O BAKER decided to
come and see what we wanted. once he
saw my ARM, C/O BAKER ask for my #I O
CARD and stated, I am going to call
the NURSE Right now, then he told me to
keep pressure on my ARM. At 6:25 am, i
called out For C/O baker because not only did
he not come back NO NURSE came either!

At 6:30 AM C/O Baker came back to my cell #142 with 2 plastic bags And told my cellie to put the loose big pieces of glass (which i had managed to clean 3 or 4 big pieces from out the pane that was deslodged from the window Already And lay them on the table in my cell. After my cellie gave C/O Baker the glass in the bag he told my cellie McMurtry to put the other bag over the sharp pieces of glass sticking out the window which again put An inmate in harm's way. This is not my cellie's job nor was it my job to try And clean out broken glass that should not have been there in the first place. It is Against I-Doc Administrative Rules to place Any inmate in a cell with an broken window where there is a potential harm to this person. This is exactly what was done to me & this disrespect & total disregard of I-Doc 504 Rules Allowed me to be injured by broken glass in a window that should have been cleaned up before i was placed in cell #142 period. NOW i have a ~~████~~ SCAR that will be with me for the rest of my life. To Add insult to injury As of 5-1-15 when i

RECEIVED

ALL ~~...~~
REVIEW ~~...~~

Spoke to I.A TURNER & I.A JeFFerson
At or About 11:30 AM there WAS still NO
incident Report or ANy Report that would
Suggest that AN incident happen. This
is A total Cover up of Neglegence by
STAFF ON All ShrFt's & All C/o's who was
told About the window but did Nothing.
THere WAS ANother inmate in cell#142 before
myself & inmate william's was put in there
Who had broken the window & Force the
tact team to have to spray the cell down
with mase And disARM the inmate before by
Force Removing him From cell#142. This
Should have been logged in, And A incident
Report Filed. SOON AFter the cell should have
been Shaken down to make sure there was
NO weapon's hidden And All glass + potential
weapon's removed from the cell. But insted
OF doing their job's NO one did ANything
which cause my ARm to be injured!
THere should be AN incident Report
WRitten FOR the incident that happen
with the other inmate ON OR About April
2nd through the 8th OF APRil. This could
have been prevented. I Ask For A ~~tetnos~~
shot to protect myself From ANy germ's
And bacteria that the Filthy window had

RECEIVED
A ... REVI...

(D)

on it & this dirty Environment could potentially cause but nurse/ medtec Shanell and Dr. William's saw my arm and shanell only cleaned & banaged my arm through the chuck hole of my door which is filled with Bacteria & germs. I was told i needed no stitches and it was only a flesh would and for me to stop being a drama queen. This statement had me vary upset because i am a man and not anything else so i took that as disrespect and vary unprofessional! I didn't disrespect her so she had no reason to dispect me or judge me because i care enough about myself to want to be safe then sorry. I still havent recieved a tetnuss shot although she said if i hadn't recieved one in over 2 years she would give me one but she lied & never came back. All she gave me was some bandages and some ointment. my arm is sore and swollen. something need to be done about medical treatment at stateville c. center, response time to emergencies and the over all staff & medical staff lack of professionalism when dealing with inmates issues. I need medical assistence but yet and still only recieved ointment & bandages!

RECEIVED

ADMIN REVIEW

Exhibit (8)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

**Stateville Correctional Center**

Offender Information:

Britton _____ Thomas ___ ID#: B62376
Last Name          First Name       MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 6/27/16 930p | RN NOTE<br>S "There's a bug in my ear"<br>O: A↓O x 4. Pt had ℞ ear flushed c̄ warm water and 3 ROACHES came out. No further complaints or visible debris in Pt's ear<br>A: ear flush | P: 1) RTC<br>2) comfort measures<br>3) pt. education<br>4) Instructed to use RNSC for further issues.<br>RN ✗✗✗ |

(59)

Distribution: Offender's Medical Record

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002<br>(Replaces DC 7147)

Bruce Rauner
Governor

*Exhibit (9)*



John Baldwin
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

April 7, 2016

Thomas Britton
Register No. B62376
Stateville Correctional Center

Dear Mr. Britton:

This is in response to your grievance received on December 30, 2015, regarding Conditions (F house), Staff Conduct (unidentified C/O refused to send him to restroom from yard, 7/4/15), which was alleged to have occurred at Stateville Correctional Center. This office has determined the issue will be addressed without a formal hearing.

Offender Britton states in his grievance he has been housed in F-House at Stateville CC since 2011. He claims the unit is referred to as the "bug unit". He grieves there are offenders on the unit who take psych medication and cut themselves, bleed on the floor, smear feces on the door. He claims since 2011 there are birds, ants, roaches, and mice in the unit. He grieves there is mildew, leaking ceilings, brick falling on walls. He grieves on July 4, 2015 he was on the yard and needed to use the restroom. He claims the unidentified Officer advised him he would have to "hold it". He claims he was unable to "hold it" and defecated on himself.

The Grievance Officer's Report (3056) and subsequent recommendation dated December 11, 2015 and approval by the Chief Administrative Officer on December 18, 2015 have been reviewed.

Offender Britton self reports he has been housed in F house since 2011. He fails to cite any specific incident with regard to "bugs, mice, birds" specific to himself within the timeframe for review in accordance with DR504. This office notes F-house is visited by the exterminator on a regular scheduled basis. At the time of the grievance, offenders who were on the yard, may request to be returned to their cell for use of the restroom. It is noted once an offender left the yard for the restroom, he/she is was not allowed to return.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied. This office is unable to substantiate Offender Britton allegations of staff misconduct with regard to denial to leave the yard for the restroom. This office notes there is now a porta potty on the F house yard.

FOR THE BOARD: _____
Sarah Johnson
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
John R. Baldwin
Acting Director

4/13/16

cc:   Warden, Stateville Correctional Center
      Thomas Britton, Register No. B62376

(60)

---

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

www.illinois.gov/idoc

Bruce Rauner
Governor

John Baldwin
Acting Director

Ex H₿₶+ (10)



## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Offender Name: **Britton, Thomas**         Date: **5/18/16**

Register # **B62376**

Facility: **Stateville**

This is in response to your grievance received on **2/11/16**. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: **8/5/15**   Grievance Number: **3439**   Griev Loc: **Stateville**

- ○ Transfer denied by the Facility or Transfer Coordinator
- ○ Dietary _____
- ○ Personal Property _____
- ○ Mailroom/Publications _____
- ○ Assignment (job, cell) _____

- ○ Commissary _____
- ○ Trust Fund _____
- ○ Conditions (cell conditions, cleaning supplies)
- ○ Disciplinary Report dated _____
  Incident #_____
- ○ Other _____

Based on a review of all available information, this office has determined your grievance to be:

- ○ Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____

- ○ Denied, in accordance with DR504F, this is an administrative decision.

- ○ Denied, this office finds the issue was appropriately addressed by the facility Administration.

- ○ Denied in accordance with AD05.03.103A (Monetary Compensation for Inmate Assignments)

- ○ Denied, as the transfer denial by the facility/TCO on _____ was reviewed in accordance with transfer procedures and is an administrative decision.

- ○ Denied as the facility is following the procedures outlined in DR525.

- ○ Denied as Cell Assignment/Housing is consistent with the Department's determination of the appropriate Operational capacity of each facility.

- ○ Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.

- ○ Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.

Other: **Moot, there is now a porta potty on the yard.**

FOR THE BOARD: **Sarah Johnson**     CONCURRED: **John R. Baldwin**
Sarah Johnson                                John R. Baldwin
Administrative Review Board                   Acting Director

CC:   Warden **Stateville** Correctional Center
      **T. Britton** Register No. **B62376**

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**     (61)

Exhibit (11)

STATE OF ILLINOIS )
) SS
COUNTY OF _____ )

## AFFIDAVIT

I, Tyrone Pettees being first duly sworn under oath depose and state that the foregoing is true and correct and made upon my personal knowledge and I am competent to testify thereto.

To whom it may concern I live in Frank house stateville C.C. cell # 132 And cell #35 And I am a witness To seeing and living with Infested Roaches and mice In my cell # 132 and cell #35 I have been Dealing with This problem Since I have been here, Roaches Are infested Inside The Table, light cases, And Inside The chuck hole Entry where the staff have At stateville leave our Food Tray For hours until They give us our Food In Many cases Roaches have Already crawled Inside The Tray Roaches crawl on me And Try To crawl In my Mouth And ears While I sleep At Night I have To constantly pertect myself From Roaches And mice who eats Threw my property bag and eat My property Leaving Rat Feces In my property. Roaches Are In every cell In Frank house stateville CC Many Inmates have been Sick From Germs The Roaches Are Leaveing In our cells Stateville CC Is Infested with Roaches And mice

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: 7/27/15

/s/ Tyrone Pettees
NAME: Tyrone Pettees
IDOC#: N52785
Stateville Correctional Center
P.O. BOX 112
Joliet, IL 60434

(62)

Exhibit (12)

# To: Britton, T. B62376 - STA Unit F #129

### From the Desk of:

### Mr. Graves / Correctional Counselor I:

Friday, July 29, 2016

To:     Britton, T. B62376 - STA Unit F #129

All of these originals have been forwarded to the grievance office; these copies are for your records. The grievance office is aware that I have seen the amount of roaches that you have been dealing with, as noted on the grievance regarding that issue. The originals have been forwarded so that these grievances can be addressed on the next level,

Mr. Graves, CCI

Stateville Correctional Center



(63)

EXHIBIT (X-A)

I THOMAS BRITTON #B-62376 F-205
ON 6-23-16 showed COUNSELOR GRAVES
F-house counselor (2) bags CONTAINING
Atleast (20) ROACHES that WERE still
Alive. Roaches ARE literally everywhere
inside of my cell #205. I CAN NOT
Sleep & I have to protect my meals
when I get my tray's because the
ROACHES ARE OVER RUNNING my cell.
THIs is the case with every cell
I have been IN since I came to
Stateville C. Center, while housed
IN F-House. There is NO PERSON
that comes ONCE A month As the
Administration claims. I have to use bags to
TRAP the Roaches! THIs is not SANATARY.
  Every WORD on this PAPER is
true & Accurate! MY WITNESS is
COUNSELOR GRAVES.

WITNESS:        CCI GRAVES

           6-24-16

           (63)

# State of Illinois - Department of Corrections

## Counseling Summary

Exhibit (13)

| | | | |
|---|---|---|---|
| **IDOC #** | B62376 | **Counseling Date** | 09/29/16 13:31:50:913 |
| **Offender Name** | BRITTON, THOMAS | **Type** | Collateral |
| **Current Admit Date** | 06/24/2011 | **Method** | Other |
| **MSR Date** | | **Location** | PON EAST SEGREGRATION |
| **HSE/GAL/CELL** | E -06-17 | **Staff** | SIMMONS, JAMIE M., Correctional Counselor II |

STA was contacted regarding grievances that the offender said are still pending.  STA stated that Emergency grievance written on 6/27 re: medical treatment; deemed non-emergency and returned to him on 8/2   Grievance written 6/26 re: living conditions; received by the G.O. on 8/1 – not yet answered   Grievance written 8/4  re: 6/20/16 IDR; returned to him on 8/24 - denied

(64)

**Print Date  9/29/2016**

Exhibit

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 6-26-16 | Offender: (Please Print) Thomas Britton | ID#: B-62376 |
|---|---|---|
| Present Facility: Stateville C. Center | Facility where grievance issue occurred: Stateville C. Center | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [x] Other (specify) UN SANNTARY LIVN Conditions, Roaches in my Cell #205 & something movin Around in my Right EAR!

- [ ] Disciplinary Report: ____/____/____
Date of Report                    Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON 6-23-16 i spoke to Counselor Graves About how my cell was infested with Mice + Roaches everyday All day! I showed Counselor Graves A chip bag containing 20 or more Roaches that were still Alive. I then showed Counselor Graves Another bag containing 20 or more Roaches that were still Alive! Once he saw the Home-made Roach traps i had he was shocked to see that i had Roaches in the bag & Roaches Running Around in

**Relief Requested:** That my cell #205 & All F-house cell's be sprayed for bugs & Roaches; All ___ of F-house be Relieved of the Mice + Rat problems And i be Rewarded $10,000 for deliberate indifference

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Thomas Britton | B-62376 | 6,26,16 |
|---|---|---|
| Offender's Signature | ID# | Date |

*(Continue on reverse side if necessary)*

---

| | **Counselor's Response** (if applicable) | |
|---|---|---|

Date Received: 7,10,16     [x] Send directly to Grievance Officer     [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: THIS counseler confirms sertant Roaches in the cells every effort is made to ensure wildlife does not enter the unit. When this does happen staff ensures appropriate reportment are notified and pest rid of the wildlife. The unit is sprayed for bugs on a monthly basis. Grievant is advised to put food items covered and put away in cabr

my cell # 205. I wrote up a letter (complaint) on a regular notebook sheet of paper and asked him to read and sign it. After reading it he counselor Graves signed off on my complaint. 2 days later while laying on my bed in cell # 205, I felt a movement by my right ear. I quickly brushed my ear but it was to late because I felt what I believe to be a roach crawl inside my ear. Whatever it is everytime I try to stick something in my ear, it begin to move around causing my right ear to hurt & it is driving me crazy. It is now 11:30 pm, I was told by the two c/o's who just counted that I would have to wait until tomorrow to recieve some kind of assistance from any medical staff. Since being in cell # 205 I have developed rashes, little bite marks little bug bites and I have not been able to get any sleep or rest because I be to busy chasing roaches & mice. I have bags of roaches to prove my cell is over run with roaches, I now have a bug or roach inside of my ear because the roaches are everywhere! In the morning I am complaining to the nurse & medtec cp's & whomever I have to so I can get checked out! I have been in atleast 10 or 9 cells in F-house since being bring here 8-15-11 and all my cell's have been infested with bugs, roaches, mice, mold, leaky ceiling's, bird feces on the chuck holes regardless how many times I clean up it doesn't help! Now I have a bug or roach in my ear, this is unsanitary & unfit to house any one in F-house! No one spray's any roach spray or bug spray once a month like the administration claim's segregation cell's never ever get sprayed period! I can not continue to live like this and the fact I have, natural life makes it impossible

*Emergency* ~~grievance~~

## ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: 6-27-16 | Offender: (Please Print) Thomas Britton | ID#: B-62376 |
|---|---|---|

| Present Facility: Stateville C. Center | Facility where grievance issue occurred: Stateville C. Center |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ____/____/____
  Date of Report            Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

On 6-27-16 I saw Dr. Obaisi About Something moving Around in my ear. He told me to lean my head + looked into my ear. He said there was nothing in it. Later that day I still felt movement in my Right ear, I told the C/o's, C/o Awadi, C/o A. Johnson + 2 Nurses who were in F-house to pass out medication About my problem. The Nurses informed the C/o's to bring me to Health Care ; once I Arrived Nurse (John Doe)

**Relief Requested:** That F-house be condemned or the administration get the entire house Roach Free, all the cell's including #205 my cell sprayed! I want 10,000 for these conditions.

- [ ] Check **only** if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Thomas Britton | B-62376 | 6, 27, 16 |
|---|---|---|
| Offender's Signature | ID# | Date |

**(Continue on reverse side if necessary)**

---

### Counselor's Response (if applicable)

| Date Received: 7, 11, 16 | [x] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

_____

poured WATER, PAROXIDE INTO my EAR, let it set AND then used something to draw out (2) ROACHES that was lodged IN spde my RIGH EAR. THIS is the SAME EAR DR. Obaisi said dicn't have ANYTHING in it EAR/lee that day. FOR 2 days, I was IN PAIN AND stressed out with little to No sleep. I house IN geNeral ARE INfested with RoacHes, THIS is IN humane FoR me to have to go through while SERVING my sentence. THIS is CRUEL } unusual punishment which is a violation of my conStitutional RIGHt to be FRee From ANY + All 8TH AmendmeNt ViolatioN's. I have writteN Several grievances AskiNg StateVIlle AdmiNiStrationn to Address the problem } Now my WoRse fears have came Alive. I AM AFRaid to turn the light off IN #205 wheRe I AM currently liVing oR go to sleep! THe RoacHes ARe everywhere

WITNebs

c/o AWAd     Saw them take (2) Roaches out my EAR
c/o coleman   Saw them take (2) Roaches out my EAR
HoWARd NURSe ~~JoHN Doe~~ took the Roaches out my EAR
NURSE JANe Doe   Watched while the Roaches were Removed

I just Found out the MAle NURSe name is HoWARd
WITNess

(AttacHed ComplAINt)

*Exhibit (16)*

*1 OF 6*

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| Date: 7-8-15 | Offender: (Please Print) Thomas Britton | ID#: B-62376 |
|---|---|---|

| Present Facility: Stateville C. Center | Facility where grievance issue occurred: Stateville C. Center |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [✓] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [✓] Other (specify): The Living Conditions in F-house cells in general population & in segregation # 145

- [ ] Disciplinary Report: ____/____/____ Date of Report _____ Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

I have been an inmate at Stateville C. Center maximum security penitentiary since 2011 around the month of August. Since I first step foot in F-house which is a housing unit located inside of Stateville C. Center. This housing unit houses high security risk, segregation inmates, and inmates who have been recently released from segregation awaiting placement in another one of the four (4) other housing units. F-house is considered through out the institution amongst the inmates as well as all staff & c/o's as the bug unit & the dirty unit! They call this the bug unit or

**Relief Requested:** That the cells in F-house be sprayed & mice & rats be exterminated, there be a porter potty put on every segregation yard in the back of F-house, and the birds be removed! The cells be cleaned for mold & be rewarded $500 dollars a day every day I have

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| *Thomas Britton* Offender's Signature | B-62376 ID# | 7, 8, 15 Date |
|---|---|---|

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: ____/____/____

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

**EMERGENCY REVIEW**

Date Received: ____/____/____

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

(67)

| Chief Administrative Officer's Signature | Date |
|---|---|

2086

more commonly the crazy unit because there have been cases that occurred & continue today to occur that NORMAL inmates Find it hard to stomach. such as, There have been inmates who cut on there bodies leaving gashes that Allow blood to Rush out of them just to get attention, there have been inmates who throw Fecal matter on other inmates & or c/o's, inmates spread Fecal matter on there cell door's & wall's, at least 30% percent or more inmates housed in F-house take psych medication or speak to a psych doctor. Now why do they call it the "Dirty unit"? Well First F-house has had since i came into F-house 2011 or August Bird's that live in F-house, Fly Around F-house while NORMAL operation's Are happening everyday, these bird's have drop Faces bird Fecas on top of inmates while inmates Are walking out of there cell's. the birds land on the steel chuck holes where 90% percent of everything we touch pass through Aspecially the food the entire cell house eats. the trey's of food Are brought in on A push cart that's open not in-closed, the trey's sit there For 30 to 40 minutes before the c/o's of F-house let the cell house inmates who work As helpers pass the trey's out which consist of placing them on each chuck hole door until A c/o officer comes Around to open each chuck hole & give the inmates there trey's so they can eat this is unsanatary & A direct violation of the I DOC code of Health-safety & Sanatation! Next) you Are forced to Live in any one of these cell's in F-house with An Roach, Ant & spider problem! The Roach problem is so out of hand that at Any given time of day you may kill 30 to 50 Roaches! At night i have to sleep with the light on just to scare off the ones that don't like the light. I put tissue in my ear's because there have been inmates who have suffered from Roaches crawling in there ear's & laying egg's. When you get your trey whether it be Breakfast, Lunch or dinner you can not place it on the table for one second because the Roaches will get in your food & contaminate it And no matter what the c/o's will not give you Another trey of food. Third) the Ant's + spider's Are other insect's bugs that Reek havoc in the cell's of F-house. At no one particular time is one insect, Roach, Ant or spider not caught moving About within the cell. It is hard to get comfortable & Relax because these insects Are Always out & About & crawling on our sheet's & bed & desk Area. this is not humane, the cell's Are Filthy & i am getting sick with Head Ache, stomach viruses, coughing up mucus & can't even have a peaceful night of sleep! There have been no Exterminators to spray the cell's out

16-(A)

3 OF 6

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 7-8-15 | Offender: (Please Print) THOMAS BRITTON | ID#: B-62376 |
|---|---|---|

| Present Facility: Stateville C. Center | Facility where grievance issue occurred: Stateville C. Center |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Disciplinary Report: ___/___/___ Date of Report

- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator

- [ ] Restoration of Good Time
- [ ] Medical Treatment

- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [x] Other (specify): The Living condition of F-house. segregation + general population. cell #142 violations — 8th Amen

Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

**Counselor**, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer**, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer**, only if EMERGENCY grievance.
**Administrative Review Board**, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

In over a year in F-house. But even when did spray it was useless + it didn't slow them insects, bugs and mice down at all! 4) Since coming to Stateville C. Center, I have experienced mouses, mice that look as big as rat's running all over the galleries + cells. I have killed more than 10 mouses or mices in the last 7 months in F-house. From being in cells #350, #228, #230, #142, #243, #21, this is my second time being in #142 in F-house. All these cell's suffer from deprivation or neglect of serious problem's! This is not my

**Relief Requested:** been in segregation and $5,000 for my pain + suffering and the humiliation I suffered! Also that my window be fixed and replaced. This is cruel + unusual punishment + violation of Health + Safety

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Thomas Britton | B-62376 | 7, 8, 15 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response** (If applicable)

Date Received: ___/___/___

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

| Print Counselor's Name | | Counselor's Signature | | Date of Response |
|---|---|---|---|---|

---

**EMERGENCY REVIEW**

Date Received: ___/___/___

Is this determined to be of an emergency nature?

- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

(68)

| Chief Administrative Officer's Signature | | Date |
|---|---|---|

**ILLINOIS DEPARTMENT OF CORRECTIONS**

**OFFENDER'S GRIEVANCE** (Continued)

First grievance about the mildew, leaky ceilings, crack
cieling's and chunks of brick falling off the cieling because
against my wishes I was placed in a cell that should
have been condemned! The cell I am currently in has a
Roach infestation problem, ant's + spiders, mouses or rat's are
coming in through the bottom of the door that has gaps that
allow's these mices + rat's to come in and contaminate everything
they touch including trying to bite & infect inmates. I have
had to fight off mice that when I woke up were crawling
around by my face in my bed I this is not humane treatment
toward inmates who have the right to be free from cruel &
unusual punishment (8th amendment). We deserve equal protection
no c/o have to deal with mice, rat's or be subject to have
their food contaminated by bird's or rodent's or insect's.
F-house need's to be condemned & shut down until every
health violation is addressed & fixed! 5th) Since I have been
coming to segregation in F-house, I have been going to
the segregational yard for my (5 hour) aweek constitutional
Right to recieve fresh air & exercise. Well I came to seg
back in June of 2014 my first time and I have had to
take risk from the c/o working seg yard tower not to
catch me & write me a 504 disciplinary ticket for having
to urinate on the yard while trying to enjoy my only yard
that week. There is no porter potty (toilet) on the seg
yard nor has there ever been Atleast not since 6-18-14
my first time having to relieve myself in fear of getting
written up & recieving more segregational time I since first
coming to seg & serving this 6 month's seg time
this time I have had to urinate on the yard relieving
myself in front of other inmate's who have to do the same
because there has never been a (toilet) porter potty on the
seg yard ever! We have the right to use the bathroom to relieve
our self when we need to. The c/o's of F-house, the c/o
working the seg yard tower & the Lt Brown, Sgt. Durant
and the major, major of F-house Hunter have been told by
me along with other inmates that there is no porter potty
on the yard & we need to use the bathroom. We were
told by all that if we get caught using the bathroom
on seg yard, we would recieve a ticket and removed from
yard along with our yard priviledge's. I was afraid to
write & file a grievance for this issue because I was
afraid of harrassment & reprisal! But on 7-4-15 I was on

(16-B)

5 of 6

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: 7-8-15 | Offender: (Please Print) Thomas Britton | ID#: B-62376 |
|---|---|---|
| Present Facility: Stateville C. Center | Facility where grievance issue occurred: | Stateville C. Center |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☑ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Disciplinary Report: _____ Date of Report
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☐ Medical Treatment
- ☐ ADA Disability Accommodation
- ☐ HIPAA
- ☑ Other (specify): violation of the 8th Amendment and of the living conditions F.H.

_____ Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
  **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
  **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
  **Chief Administrative Officer,** only if EMERGENCY grievance.
  **Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON the seg YARD for About 2 hours when i had to Relieve myself (#2) defecate. I told the C/O working on the segregation tower. that i had to use the bathroom #2 And was told he would call on the radio and check to see if some one would come and remove me & take me back to my cell. After 5 minutes of waiting the the tower C/O came back & leaned his head out the tower window And said "you dead" if you got to use it, you got to hold it until YARD over! Then i asked him could i speak to the

**Relief Requested:**

Same Relief As on the other Relief Requested Grievance! 1 of 6, 2 of 6, 3 of 6, 4 of 6, 5 of 6 & 6 of

☐ Check only if this is an **EMERGENCY** grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Thomas Britton
_____ Offender's Signature

B-62376
_____ ID#

7, 8, 15
_____ Date

(Continue on reverse side if necessary)

---

| **Counselor's Response** (if applicable) | | |
|---|---|---|
| Date Received: ___/___/___ | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

Response: _____

_____

_____

_____

_____

_____ Print Counselor's Name

_____ Counselor's Signature

___/___/___ Date of Response

---

| **EMERGENCY REVIEW** | |
|---|---|
| Date Received: ___/___/___ | Is this determined to be of an emergency nature? ☐ Yes; expedite emergency grievance  ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |

(69)

_____ Chief Administrative Officer's Signature

___/___/___ Date

cell house Lt at the time and he said that's who he just called. I tried to explained how bad I had to use the toilet but was again told, Don't come to the yard if you can't hold your bowel's!! I then asked for his name & badge number but got no answer from this c/o inside the seg yard tower 1 at approximately 1 hour later I couldn't hold it (my bowels) any longer and that time I defecated on my self without any tissue or towel to try to clean myself up. I had to endure humiliation, being uncomfortable with my underwear & my jump suit smelling horable and feces all over my lower body, & boxers. this was deliberate indiffrence to a human basic need that it amounted to cruel & unusual punishment!! This violated my 8th Amendment, and my right to be treated equal as any other human, inmate or person at stateville C. center. I didn't deserve to be disregarded & treated like an animal!! This is the condition's at stateville c. center and the normal practice in F-house. especially for us segragation inmates! I am being made to have to choose whether to go to the yard or if i may have to use the bathroom. I have to give up my 5 hour yard time because 1) they don't have any potter potty for seg inmates to relieve there selves & 2) The Lt. Brown or whatever Lt. that may work F-house on saturday when he is not doing over time, Sert Durrant and the c/o's are to lazy to preform their security dutres! This should be considered an psych ward instead of a housing unit for segragation & population. I have mold (meldew) on my cell wall in cell #142 that's been there for over 90 days!! There (VIOLATION'S) is a broken window in my cell #142! The showers on the galleries have meldew on the wall's!
1) Roaches
2) Rat's & mice
3) Ant's
4) spiders
5) Bird's feces
6) mold on cell walls for over 90 day's! cleaned it up & it came back
7) No potter potty on seg yards
8) Broken window's in my cell #142 for over 90 day's
9) The showers in F-house has mold & meldew in them!
Because of this broken window in cell #142 my left arm was cut & injured in which it left a permenate mark & I received a tetanus shot. This should never have happen! incident 5-1-15

Exhibit 17 (P 7)



# John Howard Association of Illinois

P.O. Box 10042, Chicago, IL 60610-0042
Tel. 312-291-9237 Fax. 312-526-3714

September 23, 2016

Mr. Thomas Britton  #B62376
P.O. Box 99
Pontiac, IL 61764

Dear Mr. Britton,

The report you requested is enclosed.

Regards,

JHA Staff

(70)



# John Howard Association of Illinois

375 East Chicago Avenue, Suite 529 Chicago, IL 60611
Tel. 312-503-6300 Fax. 312-503-6306 www.thejha.org

# Monitoring Visit to Stateville Correctional Center 2013

Stateville Correctional Center (Stateville) is located approximately 40 miles outside of Chicago in Joliet, IL. Stateville operates a maximum-security facility (max), a Minimum Security Unit (MSU), and the Northern Reception and Classification center (NRC), where 85 to 90 percent of all Illinois Department of Corrections (IDOC) inmates enter the system.[1] Stateville also manages and temporarily houses inmates on court and medical writs from other male IDOC facilities. This report addresses the max facility; however, many resources – including healthcare – are spread across the Stateville max, MSU, and NRC, and many conditions affect the entirety of Stateville.



**Vital Statistics:**
Population: 1,615
Rated Capacity: 978
Operational capacity: 1,693
Average Age: 31
Percentage of Population aged 50 or older: 22%
Average Annual Cost per Inmate (FY 2011): $28,870
Population by Race: 75% Black, 14.5% White, 10.5% Hispanic/Latino

*Source:* IDOC, April 2013

## Key Observations

- Physical plant issues continue to raise major concerns, particularly in the roundhouse, Unit F, which is the only panopticon still in use in the United States.

- Inmates' healthcare needs overwhelm Stateville where high demand is continually aggravated by insufficient resources, including key staffing vacancies.

- Although visitation has been demonstrated to both aid in facility management by promoting positive behavior and correlate to reduced recidivism, Stateville's visiting room physical space and hours are limited.

- Illinois' fiscal crisis had crippled the Illinois Correctional Industry programs at Stateville.

- Additional mailroom staff were needed to alleviate delays.

---

[1] The MSU is commonly referred to as "Stateville Farm" and inmates housed there have work assignments throughout Stateville in both the max and NRC. The latest monitoring report on NRC and MSU is available at http://thejha.org/NRC.

(71)

# Monitoring Visit to Stateville Correctional Center 2013

## Executive Summary

The primary problems noted in JHA's prior reports persist at Stateville's maximum-security facility.[2] Yet, as JHA's 2011 report stated: "Stateville's biggest challenges—severe overcrowding, understaffing, a grossly deteriorating physical plant, lack of education and inmate programming, and lack of resources to address these issues—are squarely beyond the control of the facility's staff and administration."[3]

The strain of continual overcrowding at NRC, where inmates regularly are sleeping in locations intended for other uses, directly impacts all of Stateville. In reviewing this draft in September 2013, IDOC officials stated that there had not been inmates sleeping in Stateville max's nonstandard housing locations since July 2013. However, JHA spoke with staff who stated that there are still regularly 200 to 300 inmates sleeping in such locations at NRC. More precisely, as of September 20th, 2013, there were 100 inmates awaiting transfer to boot camp housed in a gym, 35 inmates on the floor in the NRC healthcare unit, 90 inmates on the floor in NRC staging, and three in the MSU on the floor. Staff also expected that there would be even more inmates on the floor the following week based on lack of transfers out. IDOC officials responded that this expected increase was speculation. Staff stated that inmates have been sleeping in the gym for the past two years and in the staging area for the past eight months. Since the time of JHA's 2012 NRC monitoring visit, there are more than 100 additional inmates housed at Stateville.[4] IDOC officials stated that they see the inmates housed in nonstandard areas in the NRC as a transient situation because the same inmates are not housed in nonstandard areas for extended periods.

Nonetheless, the sharing of physical space and staffing resources with the overcrowded NRC further reduces already limited opportunities for Stateville max inmates.[5] Illinois' prison population is aging and many Stateville max inmates are serving 20 years to life. As IDOC faces

---

[2] This report is based on an April 4, 2013 monitoring visit and ongoing communications with inmates and staff. This report supplements JHA's previous monitoring reports, available at http://www.thejha.org/stateville. Stateville and IDOC administrators reviewed and fact-checked a draft of this report and it was last discussed with JHA on October 2, 2013. No factual substantive changes have been made since this time prior to publication. All statements of opinions and policy recommendations herein are JHA's unless otherwise stated. *See also* JHA's 2013 publication *How JHA's Prison Monitoring Works*, available at www.thejha.org/method.

[3] Available at http://www.thejha.org/stateville.

[4] Available at http://thejha.org/NRC.

[5] In addition to the burden of an infirmary shared with NRC, at the time of the visit, due to commissary shared with NRC, the max inmates had commissary services only every six to eight weeks. IDOC officials reported that since the visit with the addition of staff inmates are now offered commissary twice a month. Administrators reported that discussions continue on creating a separate NRC commissary. Additionally, inmates who have been in intake at NRC more than 60 days, which is increasingly common given limited available bed space throughout IDOC, must use the max visiting room, again limiting opportunities for other inmates. However, JHA reiterates our recommendation from the 2012 JHA NRC report that NRC segregation inmates also be permitted visitation after 60 days if not otherwise restricted (C Grade). IDOC officials report that a plan is being developed for NRC visitations at the NRC. JHA will continue to monitor these developments.

teams make rounds daily; hence, a wait of "more than two months" would be highly unusual. They acknowledged that delays may occur, but stated that emergent cases never wait.

JHA received several complaints from inmates who had transferred into Stateville from other facilities without being reevaluated or getting medications and prescriptions continued. Administrators confirmed that this does at times accidentally occur, which points again to the need for better a better recordkeeping mechanism. Inmates also reported that they are not allowed to submit refill and medical permit requests early enough to ensure continuous treatment at Stateville.[26] IDOC officials explained that often patients must be reevaluated before their prescriptions can be refilled and inmates do not want to wait for this normal procedure. IDOC officials also stated that there are documented cases of inmates claiming to have not been seen who actually were seen. IDOC officials further wished to note that JHA cannot confirm or deny the validity of particular inmates' reports. JHA will continue to monitor such issues and encourages inmates to clearly document their concerns.

Inmates reported that physicians are frequently not at the facility and appointments are cancelled. IDOC officials reported that since the visit, daily nurse sick call is now held in the housing units, which should eliminate waits and free up the physicians to see only those requiring physician attention. Outside appointments are also often canceled or delayed. In addition to scheduling issues, lockdowns also cause appointments to be canceled. Stateville had 88 days of lockdown in the prior year.[27] JHA finds the policy of canceling all healthcare appointments due to lockdown untenable and again recommends this be reconsidered.[28] In one documented example, a "one week" follow-up appointment actually occurred 12 weeks later and a pending specialist appointment had not occurred in more than four months. Several inmates reported never receiving follow-up appointments with both in-facility staff and specialists. JHA believes that this is also an area where electronic recordkeeping would be helpful.

---

Commission on Correctional Heath Care, *Position Statement: Charging Inmates a Fee for Health Care Services* (October 2005), available at http://www.ncchc.org/charging-inmates-a-fee-for-health-care-services.

[26] JHA interviewed an inmate who stated he had a blood clot in his leg and continuously tried to get treatment. Eventually he was sent to University of Illinois, Chicago (UIC) specialist and was returned to Stateville with medication and prescriptions that needed to be refilled. However, he did not get a refill and the inmate relapsed and had difficulty walking and communicating. His cellmate wrote to the UIC doctor, who then requested the inmate be brought back to UIC for further treatment and held there for the remainder of his recuperation to ensure proper treatment. IDOC officials reported that they were not notified by inmate of this alleged incident. They note that the onsite Wexford medical director is the primary doctor who has final authority over all treatment regimens.

[27] In comparison Pontiac Correctional Center and Menard Correctional Center, IDOC's other male maximum-security facilities, reported six and 251 days of lockdown respectively. However, Pontiac inmates have very little movement to begin with, as Pontiac is primarily used for long-term segregation. JHA reports on these facilities are available at http://thejha.org.

[28] *See* JHA's 2012 Menard report, available at http://thejha.org/menard.

At the time of the visit, due to the lack of a physician, there was a backlog for the chronic care clinics other than Hepatitis C and HIV clinics, which are provided through Telemed. Staff and administrators at Stateville considered Telemed an asset, as it is does not require waiting for specialist appointments, nor does it incur additional security and transportation costs. IDOC officials reported that since the visit, the clinical backlog has dramatically improved, noting that as of September 1, 2013, there were only 56 hypertension and 18 diabetic cases waiting, while all other backlogs have been cleared. JHA hopes that Stateville will remain on the path of continued improvement.

| Number of Stateville Inmates Diagnosed[29] | |
|---|---|
| Asthma | 158 |
| Cancer | 20 |
| Diabetes (Type 1) | 105 (2) |
| Hepatitis C | 83 |
| HIV | 14 |
| Hypertension | 404 |
| Seizure | 26 |
| General Medical | 92 |

At the time of the visit, 352 inmates were older than 50 years old and 74 inmates were identified as having a disability. JHA commends Stateville for offering a separate recreation time for inmates with special needs. Many healthcare complaints JHA received related to conditions of an older population, including things like requests for lower bunk permits. IDOC officials noted that while they will grant bottom bunk requests when appropriate, they do not grant bottom gallery requests. JHA recommends that IDOC continue to plan for accommodation of the needs of Illinois' aging prison population, as discussed in JHA's 2013 Dixon report.[30]

Additionally, JHA interviewed and corresponded with deaf and hearing-impaired inmates who reported difficulties at Stateville. Issues reported ranged from inability to get hearing aid batteries and depression, to receiving segregation time for failing to hear an order and safety concerns related to being unable to hear. IDOC officials stated that battery replacement has a weekly schedule and that batteries can be furnished as needed outside the schedule. They also stressed that segregation is not automatic, and that there is a review process in which hearing difficulties, when proven, are considered. JHA again recommends that IDOC ensure adequate means of communication for deaf and hearing-impaired inmates.[31] IDOC officials reported that they do ensure this, in part through two onsite certified sign-language interpreters and video interpretation. JHA will continue to monitor this issue.

Other inmates with disabilities at Stateville reported instances of neglect including not receiving sufficient diapers for incontinence issues and mobility issues where they were not getting consistent accommodations to be taken to chow hall or showers. Stateville administrators reported they had addressed particular instances that JHA raised to their attention.

---

[29] Data provided by Stateville administrators from April 2013.

[30] Available at http://thejha.org/dixon.

[31] Healthcare via Telemed can provide sign language interpretation. At the time of the visit, administrators were considering the possibility of adding sign language interpretation for religious services. Since the visit, administrators reported that the issue of sign language for religious services is being addressed by the Americans with Disabilities Act (ADA) Coordinator and others. Officials report they will review the same program at Big Muddy River Correctional Center for possible implementation at Stateville. *See also*, JHA's 2013 Big Muddy report and 2012 NRC report, available at http://thejha.org.



Monitoring Visit to Stateville Correctional Center 2013       Exhibit (2 D)
Page 11 of 18

# Living Conditions

Stateville max inmates typically are double-celled and may leave their cells for work or school assignments if applicable,[32] visits,[33] medical passes, law library, chow, or twice weekly two-and-a-half-hour recreation periods.[34] Like other maximum IDOC facilities, Stateville offers little in formal educational or vocational opportunity for max inmates, with fewer than five percent of the population participating at the time of the visit.[35]

IDOC officials noted that the Stateville offerings meet all agency policies, which reflect State of Illinois laws. Since the visit, administrators reported that educational course offerings have been increased and the barber program is pending State of Illinois licensing.[36] JHA commends these positive developments and encourages IDOC to continue to strive for more than the legally required minimum across the board. We note that in approximately six months since JHA's 2013 visit, Stateville administrators reportedly have been capable of making several substantial improvements, notably with some of JHA's longstanding concerns regarding mixed populations in the roundhouse.

At the time of the visit, the roundhouse or Unit F, housed disciplinary or administrative segregation,[37] orientation, general population overflow, inmates on court and medical writs, protective custody inmates, and inmates requiring single-celled status including non-compliant mental health inmates and inmates classified as either predators or vulnerables.[38] As noted in prior JHA reports, housing so many different populations together is problematic. It is inadvisable for inmates with protective custody status to intermingle with others, and in the roundhouse, though the populations were housed on different levels, these inmates may encounter inmates in disciplinary segregation and inmates from another facility at Stateville on a writ. Further, the design of the roundhouse panopticon is intended to enable lines of sight.

Administrators reported that since the visit Unit F has been realigned. They stated currently there are three types of population housed in Unit F: segregation, general population, and overflow status. Administrative detention and protective custody inmates have been relocated to Unit X.

---

[32] At the time of the visit there were about 250 inmates with work assignments and 60 inmates in educational programming, meaning that about 80% of the population had neither.

[33] General population inmates are permitted a maximum of five two-hour visits a month (with one weekend visit and longer visits for those who travel far distances), for more information on visitation see http://www2.illinois.gov/idoc/facilities/Pages/statevillecorrectionalcenter.aspx.

[34] Those housed in Unit F or the infirmary have only one recreation period weekly.

[35] *See* Programming and Industry section below.

[36] *See* further discussion in the Programming and Industry section below.

[37] Notably Stateville's segregation population was down to 78 from 137 at the time of the 2011 visit. The average length of time in segregation at Stateville reported by administrators in 2013 was 4.1 years, compared to 13 months reported at the time of the 2011 visit. Stateville uses a modified Long Term Segregation Incentive Program, to give inmates an opportunity to reduce their segregation time. Administrators report that a committee reviews long term segregation placements monthly and that as of September 1, 2013 six inmates were active in the program. At the time of the 2013 visit, 11 of the 78 inmates in segregation were receiving mental health treatment. For more information about IDOC use of segregation reduction techniques see JHA's 2013 Pontiac report, available at http://www.thejha.org/pontiac.

[38] At the time of the visit, Unit F housed 78 segregation inmates (out of a capacity of 134), 12 inmates on writs, 61 protective custody inmates, and 35 single-celled inmates.

(73)

Administrators reported that this move allows the facility to better manage their population to include services provided to those with special mental health needs, such as those with predator or vulnerable classifications.

During the visit, JHA observed deterioration and lack of upkeep in many parts of the max facility. The covered walkways showed years of paint shed in chips. Several buildings on the grounds have been condemned and closed. Inmates at Stateville complained that the water is discolored and has a strange taste.[39] At the time of the visit, Stateville administrators reported a need for some physical plant water line repair, which has since been completed. However, they stated that all water reports including the annual drinking water quality report were in complete compliance with the Environmental Protection Agency standards and regulations and that water is tested by an outside agency, Aero Lab. Inmate reports of bird, rodent, cockroach, and spider infestations were common and credible. Since the visit, the exterminator contract has been expanded.

JHA visitors found Unit F to be in particularly poor condition, noting peeling paint,[40] water leaks, and mold. Inmates complained of insufficient cleaning supplies and of the plumbing in the building, which requires a ten-minute toilet flush delay. IDOC officials stressed that the ten-minute flush is a timer system to avoid some inmates intentionally flooding cells. Again, inmates reported cockroaches were impossible to get rid of and swarmed their cells at night, even getting in their ears and wound dressings. Administrators responded, as noted above, that since the visit they had reviewed the pest control contract and would be changing the insecticide spraying schedule and locations. JHA believes this is a positive step; yet given that this is a longstanding issue, we still have concerns.

JHA received reports from several inmates that they had particular concerns about double-celling in Unit F. We also received reports that previously a mental health staff member helped facilitate appropriate assignments, but this individual had resigned. JHA interviewed several inmates in Unit F who appeared desperate for assistance, including some inmates who appeared to be hallucinating. Other inmates expressed fear of assault, depression, suicidal thoughts, and some seemed particularly suspicious and paranoid. Poor physical plant conditions, including extreme temperature and terrible acoustics, likely make inmates more uncomfortable, and these inmates may be less likely to sleep, due to fear of cellmates or cockroaches, adding to instability. Administrators stated that inmates housed in Unit F are routinely seen by mental health staff and crisis team members are on all shifts, seven days a week. Further, IDOC officials reported that the realignment of Unit F has permitted a quieter atmosphere and more privacy for treatment.

Cells with Plexiglas coverings are typically difficult to see and communicate through, but in Unit F, JHA visitors observed in some such cells a layer debris trapped in the door fronts that needed cleaning. Administrators stated that cleaning supplies are available upon request and regular cleaning schedules are followed. Inmates in Plexiglas fronted cells also expressed concerns about temperature and ventilation, which are issues throughout the facility. JHA repeats our recommendation that IDOC must carefully monitor temperature and ventilation control, and

---

[39] Correspondingly, inmates complained of limits on drinking water that could be purchased on commissary.
[40] Administrators noted that a staff painter was hired in March 2013.

institute a strategic plan for improvements. Administrators reported that since the visit, three large wall-mounted fans were installed in Unit F.

A fault at many IDOC's antiquated facilities is that heat is either on or off. During the visit, this was noted in the non-contact visiting area, which was very hot. Inmates also complained that they are not able to effectively regulate temperature and ventilation through use of windows, some of which were broken. Given the lack of control over heat, JHA could not understand why the facility had to collect inmate jackets at a set time, given the unseasonable low temperatures in late Spring this year after the heat was turned off. IDOC officials stated that this was strictly for a one-time inventory and replacement of worn-out jackets, noting that after a warm March, April was unusually cold.

JHA receives many complaints about apparel cleanliness and availability throughout IDOC, but at Stateville and NRC we have observed numerous inmates with clothing and shoes that were literally falling off. Additionally, we observed dirty mattresses and torn sheets.

JHA visited the dietary area. Fried chicken was being prepared. There were several apparent issues in the kitchen, including needed plumbing repairs and an inmate worker was doing some repair inside a large oven. We noted deteriorating flooring and built up debris trapped in various corners, likely blown in through vents. Inmate workers complained of rodents and droppings, stating that they only had glue boards to combat mice. IDOC officials responded that poison is not permitted in food preparation areas for sanitary reasons and that "snap" traps were eliminated when inmates stole them to make weapons, later discovered in routine searches of cells.

Other inmates complained about dietary sanitary practices, unclean food trays, not getting as much food as in the past, getting spoiled food, cold food, high soy content, no variety, and no fresh produce. IDOC officials wished to note that JHA cannot confirm or deny the validity of particular inmates' reports. They deny that Stateville serves spoiled food and that the menu lacks variety. IDOC officials stated that adult males of low to moderate activity, such as inmates, require approximately 2,000 calories per day and IDOC inmates get that daily. They also explained that IDOC bologna is not the reddish color most people are accustomed to due to the fact that it contains no chemical red dye. Stateville has six gardens and administrators reported that produce from the gardens is utilized in the facility. JHA recommends that the facility continue to expand this self-sustaining initiative. Further, we continue to recommend that IDOC and Stateville consider evidence on the impact of diet, particularly the negative impact of processed foods, on health and facility management.[41] IDOC officials noted that they have a dietician on staff at Stateville and stated that fresh fruit is part of the Statewide Department Master Menu.

Stateville runs three library sessions per day with 30 inmates per session for a period of two hours. Inmates reported it was difficult to get to the library and there was a long waitlist. There are 10 inmate law clerks, two paralegal assistants, and a library manager. Some inmates reported that they must pay others with commissary for help with legal work. Inmates reported that books

---

[41] *See e.g.*, JHA's 2012 healthcare report, Recommendation 4, available at
http://thejha.org/sites/default/files/Unasked%20Questions-Unintended%20Consequences.pdf.


(75)

and forms needed updates. However, paralegals have access to electronic legal resources. Several inmates reported that the typewriters in the library had no ink.[42] Administrators reported this was corrected after the visit. JHA also noted that the library was in need of repairs, including painting and fixes for roof leaks.

Contact with the outside world through phones, visits, and mail, are vitally important for inmate wellbeing,[43] particularly where activities are as limited as at IDOC maximum-security facilities.[44] Due to the proximity of Stateville to Chicago, where most inmates' families reside, this is a heavily visited facility. Nonetheless, visiting hours are limited to only 7:30 am to 2:30 pm daily. JHA recommends that Stateville expand visiting hours. IDOC reports that these hours are limited due to security concerns. Stateville has an extremely problematic visiting room, which is accessed by stairs, small for the population,[45] can become extremely loud, and has seating configured for security purposes so the inmate's seat is awkwardly elevated above those of the visitors.[46] Visitors with disabilities may be able to arrange to use the attorney visitation rooms if they are not in use. IDOC officials note that available space is determined by security requirements. JHA received a few reports that staff were reluctant to guarantee or schedule special visitation. JHA has also received reports of visitors being treated disrespectfully to discourage visitation. IDOC officials deny that staff discourage visitation and stated that occasionally visitors violate security and other rules upon arrival and must be turned away. However, they report that all allegations of rudeness are investigated.

## Programming and Industry

At the time of the visit, there were two Adult Basic Education (ABE) classes with 30 students enrolled and 87 on the waitlist. 25 inmates were enrolled in the General Education Development (GED) class, with 42 on the waitlist. In the latest available data, 17 inmates obtained ABE and 11 obtained GED in the prior year. Stateville offered a 1,500-hour barbering vocational program with five participants.[47]

Due to other prison closures, Stateville has acquired additional educators and at the time of the visit, administrators stated they planned to offer additional GED and ABE classes. Since the visit, administrators reported that educators and classes have been added in each category and

---

[42] In 2012 all personal typewriters were confiscated from inmates in maximum-security facilities due to IDOC determining that inmates were weaponizing typewriter parts. *See* JHA 2012 Menard report, available at http://www.thejha.org/menard.

[43] *See e.g.,* "Confronting Confinement: A Report of the Commission on Safety and Abuse in America's Prisons," p. 35-37, available at: http://www.vera.org/sites/default/files/resources/downloads/Confronting_Confinement.pdf.

[44] JHA commonly receives complaints from Stateville inmates that they do not even have writing instruments and they can be completely cut off from the outside world if they have restricted phone and visitation status.

[45] Stateville can accommodate a maximum of 33 general population, 20 NRC, four ADA or special visits, as well as non-contact visits, at once.

[46] One reason for this is so that items cannot be passed underneath the table; however, inmates are searched before and after visits and this seating arrangement precaution is not used at other IDOC facilities.

[47] *See also,* IDOC's April 2013 Quarterly Report, available at http://www2.illinois.gov/idoc/reportsandstatistics/Documents/IDOC_Quarterly%20Report_Apr_%202013.pdf.

PRIORITY MAIL

US POSTAGE **$008.30**<sup>0</sup>

Hasler
12/05/2016

ZIP 61764
011D12603888

CORRESPONDENCE
FROM AN INMATE OF
ILLINOIS DEPT
OF CORRECTIONS

1:16-cv-11180
Judge Jorge L. Alonso
Magistrate Judge Michael T. Mason
PC4

12/07/2016-16



UNITED STATES
POSTAL SERVICE®

USPS TRACKING #

9114 9999 4431 4923 8983 38

LAB400R Aug. 2013
7690-17-000-0669

For Domestic Use Only

Label 107R, July 2013

UNITED STATES
POSTAL SERVICE®

PRIORITY MAIL

TRACKED ★ INSURED